| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
| OFFIT KURMAN, P.A. By: Paul J. Winterhalter, Esquire (006961986) Augustus T. Curtis (*pro hac vice* pending) Court Plaza South 21 Main Street, Suite 158 Hackensack, NJ 07601 Telephone: (267) 338-1370 Facsimile: (267) 338-1335 E-mail: pwinterhalter@offitkurman.com        Augie.curtis@offitkurman.com *Proposed Counsel to Debtor* | |
| In re:  BAKER & TAYLOR, LLC,  *Debtor* | Chapter 11  Case No. 26 – 12863 CMG  Judge: Christine M. Gravelle |

**DECLARATION OF DANIEL SCOTT FISHMAN IN SUPPORT OF CHAPTER 11 PETITION AND FIRST DAY MOTIONS**

I, Daniel Scott Fishman, being duly sworn, certify as follows:

1.      I am a Managing Director with Riveron RTS, LLC ("Riveron"), a financial advisory firm with offices throughout the United States. I submit this Declaration in support of the chapter 11 petition (the "Petition") filed by Baker & Taylor, LLC ("Baker & Taylor" or the "Debtor") on March 16, 2026 (the "Petition Date") and in support of the relief being sought in certain "first day" motions and applications (the "First Day Motions") filed with the Court contemporaneously herewith.  If called upon to testify, I would testify competently to the facts set forth in this Declaration.

2.      Riveron is a is a financial advisory firm with offices throughout the United States. Its principal office is located at 2515 McKinney Ave, Dallas, TX 75201. On the Petition Date, the

-1-

Debtor filed its *Application for Retention of Riveron Management Services, LLC as Financial Advisor for the Debtor)* (the "Application"), seeking authority to retain and employ Riveron as its financial advisor in the bankruptcy case.

3.      Prior to the Petition Date, Riveron served as a financial advisor to Baker & Taylor over a period of several months. During Riveron's engagement, I have personally performed advisory duties to the Debtor on behalf of Riveron, and I have acquired and possess personal knowledge of the matters set forth herein.

### I.      Prepetition Efforts to Obtain Financing for Baker & Taylor or, in the Alternative, to Sell the Baker & Taylor Business.

4.      Baker & Taylor engaged Riveron on July 16, 2025 to evaluate and assist in restructuring efforts, including raising new debt or equity capital to sustain operations, pursuing a potential sale of the company's business and assets, and, if those alternatives were unsuccessful, assisting with an orderly wind-down and liquidation designed to maximize recoveries for both secured and unsecured creditors.[1]   Over the following months, Riveron maintained nearly daily contact with management, potential sources of financing, multiple potential asset purchasers, and Baker & Taylor's principal lender, CIT Northbridge Credit LLC ("CIT"), managing due diligence and coordinating negotiations with potential lenders and buyers, and advising the company and CIT on several strategic asset dispositions to secure value for creditors.

5.      Through July and August of 2025, Riveron assisted Baker & Taylor to identify sources of new debt and equity funding, and worked with directors and officers to develop plans and projections for solicitation of potential financing parties. I and other Riveron employees reviewed Baker & Taylor financial statements, compiled key company documents into a "data

---

[1] The history of Baker & Taylor's operations and the events which led to its liquidity problems in 2025 are set forth more fully in the Declaration of Amandeep S. Kochar in Support of Chapter 11 Petition and First Day Motions, filed contemporaneously with this Declaration.

room" for use by potential counterparties, and participated in discussions with interested parties concerning Baker & Taylor's financing efforts.

6. With Riveron's assistance, Baker & Taylor identified 41 potential sources of new capital, and it received 27 executed non-disclosure agreements from parties expressing interest in providing financing. After these parties executed non-disclosure agreements, Riveron provided access to Baker & Taylor's data room for financial due diligence by such parties. Five parties ultimately issued term sheets concerning potential financing; however, Baker & Taylor was unable to reach binding agreements for new financing with such parties.

7. Baker & Taylor, with Riveron's assistance, also sought a purchaser for its business assets. On September 6, 2025, Baker & Taylor obtained a Letter of Intent from ReaderLink, LLC, a national book distributorship based in Chicago, Illinois, to purchase substantially all of Baker & Taylor's assets through a private sale under Article IX of the Uniform Commercial Code by CIT.

8. Riveron assisted with financial due diligence for the potential ReaderLink transaction. Among other tasks, Riveron worked with Baker & Taylor and ReaderLink to develop working capital models, "sources and uses" analyses, and financial terms for a transition services agreement necessary to consummate the transaction.

9. Despite the best efforts of Baker & Taylor and Riveron, the ReaderLink transaction failed to close. On September 26, 2025, the scheduled closing date, ReaderLink withdrew its offer to purchase Baker & Taylor's assets and rescinded employment offers for over 600 Baker & Taylor employees.

## II.      Baker & Taylor's Wind Down of Business Operations.

10.      Due to the collapse of the ReaderLink transaction and the company's inability to secure replacement financing, Baker & Taylor, in cooperation with CIT, began urgent efforts to wind down its business operations and divest discrete parts of its and its affiliates' assets and operations. In my professional opinion, an orderly liquidation of assets was the only viable path to preserve value for creditors, and I believe management worked with transparency and credibility to accomplish this process and maximize creditor recovery.

11.      On October 3, 2025, Baker & Taylor employed a liquidator, Great American Holdings, LLC ("GA Group"), to develop a plan for liquidating its inventory of books and media. Riveron worked closely with the GA Group to analyze potential recoveries from inventory and fixed asset sales. As a result of these efforts, Baker & Taylor liquidated the majority of its inventory and fixed assets between October 2025 and January 2026, obtaining an aggregate amount of approximately $8.7 million from these efforts.

12.      In addition, Riveron assisted Baker & Taylor in efforts to collect accounts receivable, including numerous large receivables due to Baker & Taylor from customers and contract counterparties. From October 2025 through February 2026, Baker & Taylor liquidated the majority of its accounts receivable for an aggregate amount of approximately $11 million.

13.      In addition to these efforts, Baker & Taylor, with Riveron's assistance, marketed and ultimately sold certain discrete business components. Baker & Taylor obtained a purchaser for its digital publishing business, through which Baker & Taylor offered subscriptions to e-books and e-audio media to public library customers. After entertaining offers from several parties, on December 15, 2025 and December 24, 2025, Baker & Taylor consummated two asset purchase agreements for sale of its digital business assets to LibraryOne Digital, Inc. ("LibraryOne"), and

CIT issued a partial lien release to facilitate the transaction. Under both asset purchase agreements, Baker & Taylor agreed to provide certain transitional services to LibraryOne through April 30, 2026.

14.     Baker & Taylor also sought a purchaser for a business division known as Baker & Taylor Publisher Services ("BTPS"), which provided publishing services and digital and physical book production to publishers across the United States. BTPS's business activities were principally housed in Bookmasters, Inc. ("Bookmasters"), an Ohio corporation affiliated with Baker & Taylor. On November 21, 2025, Baker & Taylor and Bookmasters consummated the sale of the BTPS business assets to LSC Communications Book LLC, d/b/a Lakeside Book Company ("Lakeside"). Again, CIT issued a partial release of its liens to facilitate the Lakeside transaction.

15.     Because CIT held a secured position over substantially all of Baker & Taylor's assets, many of the transactions undertaken during the wind-down process required CIT's approval and lien releases, and Riveron was in close communication with CIT and Baker & Taylor's management team, often multiple times per day, regarding financing alternatives, asset sales, and wind down efforts.

16.     As a result of the foregoing wind down efforts, on February 13, 2026, Baker & Taylor retired the full balance of the CIT Credit Facility, which had stood in excess of $30 million in August, 2025.

17.     As discussed above, during its engagement Riveron has conducted extensive marketing efforts and market testing of Baker & Taylor's assets. In my professional opinion, the asset sales and liquidation efforts undertaken during the wind-down process were designed to maximize value for Baker & Taylor's creditors and represented commercially reasonable transactions under the circumstances.

### III.    The Chapter 11 Filing and Remaining Liquidation Activities.

18.     While Baker & Taylor's wind down efforts have met with considerable success, it faces mounting challenges from protracted and expensive litigation by vendors, contract counterparties, former employees and others. Baker & Taylor faces three (3) separate class action litigations by former employees alleging violation of Federal and state "WARN" acts. The company believes these claims are spurious, but it is increasingly unable to fund litigation of these matters.  In addition, Baker & Taylor faces litigation by OCLC, Inc. ("OCLC"), a nonprofit library cooperative based in Dublin, Ireland, concerning alleged misuse of certain "WorldCAT" records by the company.  While Baker & Taylor has vigorously defended the OCLC litigation, it is unable to fund its defense without depleting remaining assets.

19.     Contesting these and other matters has imposed significant strains on management and required allocation of limited resources which otherwise would be available to pay creditor claims.  Defending these and other litigation matters is simply unsustainable for the company at this stage.

20.     As a result of these challenges, Baker & Taylor filed the Petition seeking protection of the Bankruptcy Court to permit it to complete the liquidation of its assets and distribution to creditors under a liquidating chapter 11 plan.  Orderly liquidation under the protection of the Court is best suited to maximize creditor recoveries without the disruption of continued litigation and demands by individual parties.  Baker & Taylor's remaining assets are able to be liquidated with a minimum of administrative expense. The company continues to employ a small number of employees, principally to assist with collection of receivables, wind up the company's affairs, and complete the transitional services for which the company receives payment from LibraryOne. Remaining employees and contract workers will provide services "remotely," permitting Baker &

Taylor to shutter its remaining offices and avoid administrative rent claims and utility costs. Baker & Taylor's officers, including its chief executive officer, have sharply reduced their compensation, and shall continue to enforce Baker & Taylor's rights to collect accounts and contract rights, many of which are complex and require institutional knowledge to collect effectively.

**IV.     *The First Day Motions.***

21.     To enable Baker & Taylor to operate effectively and minimize potential disruption to its wind down efforts, it is requesting certain relief in the First Day Motions filed with the Court concurrently herewith. The First Day Motions are intended to promote a seamless transition into the Bankruptcy Case, allowing Baker & Taylor to continue to operate with existing cash and collections, continue to pay its limited workforce in the ordinary course of business, maintain its existing cash management systems and insurance policies, and generally to minimize potential adverse effects on operations during the process of orderly liquidation.

22.     A full description of the First Day Motions is set forth in the Kochar Declaration.  I believe that the relief requested in each First Day Motion is necessary to preserve and maximize the value of Baker & Taylor's estate, essential to the successful conclusion of Baker & Taylor's liquidation.

*A.  Motion For an Order Extending Time to File Schedules and Statements.*

23.     Baker & Taylor has filed an Application seeking an extension of the time for filing the schedules, statement of financial affairs and other documents required to be filed pursuant to section 521 of the Bankruptcy Code and  Bankruptcy Rule 1007(c), through and including April 20, 2026.  Riveron is assisting the company to complete the required documents, but believes the schedules and remaining documents will not be prepared for filing by the current deadline of

March 30, 2026. I believe a brief extension will assist Baker & Taylor to provide complete and accurate information in these required documents.

    B.   *Application to Retain a Claims and Noticing Agent.*

24.    Baker & Taylor has filed a motion seeking to authorize the retention of Omni Agent Solutions ("Omni") as claims and noticing agent in accordance with 28 U.S.C. §156(c). Baker & Taylor anticipates that nearly 2,000 entities and individuals will need to be served in connection with the chapter 11 case. To assure timely, efficient noticing and administration of claims in the case, it obtained and reviewed engagement proposals from at least three (3) other court-approved claims and noticing agents to ensure a competitive process. Based on all engagement proposals obtained and reviewed, Omni's rates are competitive and reasonable given Omni's quality of services and expertise. Accordingly, I believe that approval of the retention of Omni as Claims and Noticing Agent is in the best interests of Baker & Taylor's estate.

    C.   *Motion of the Debtor Seeking Entry of an Order Authorizing the Debtor to Redact Certain Personally Identifiable Information*

25.    Baker & Taylor has filed a motion seeking authority to redact certain personal information of present and former employees from the public matrix filed with the Court. Redaction of employee addresses is necessary to protect such individuals' vital information from potential identity theft and threats to personal safety and is authorized under the Bankruptcy Code and Bankruptcy Rules. I support the relief sought in the motion.

    D.   *Motion for Continuation of Cash Management Systems*

26.    Baker & Taylor has filed a motion seeking the entry of interim and final orders authorizing, but not requiring, the company to: (a) continue use of their existing cash management system by, among other things, (i) maintaining existing bank accounts, (ii) paying certain pre-petition charges from the accounts, including payments for general and administrative business

expenses incurred in the ordinary course of business; and (b) continue to use their business forms in the same manner in which they existed prior to the Petition Date (the "Cash Management Motion"). The relief requested in the Cash Management Motion is necessary to minimize the expense to the estate associated with obtaining new banking accounts, developing and, or, purchasing entirely new forms, and the disruptions and delays in conducting business that would flow from this process. I believe the relief sought in the Cash Management Motion is in the best interest of the estate, its creditors, and all other parties in interest.

*E.   Application for Payment of Employee Wages and Related Compensation.*

27.     Baker & Taylor has filed an application seeking entry of interim and final orders (i) authorizing, but not requiring, payment of prepetition wages, commissions, and employee benefits, (ii) authorizing and directing banks to honor checks with respect thereto, and (iii) authorizing, but not requiring, payment of post-petition wages and employee benefits (the "Payroll Motion").

28.     Baker & Taylor has a limited remaining workforce consisting of approximately 20 full time employees and 12 independent contractors assisting with the company's wind down of business operations.  I believe that the relief requested in the Payroll Motion is essential to preserve and maximize the value of the Baker & Taylor estate, and in the best interest of creditors and other parties in interest.

I certify under penalty of perjury that the above information is true.

Date: March 15, 2026

*/S/ Daniel Scott Fishman*
Daniel Scott Fishman

4935-8452-4696, v. 3