**IN THE UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY**
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.
Jason H. Alperstein, Esq.
5 Becker Farm Road,
Roseland, New Jersey 07068
Telephone: (973) 994-1700 ·
jalperstein@carellabyrne.com

STRANCH, JENNINGS & GARVEY, PLLC

J. Gerard Stranch IV, Esq. (*pro hac vice*)
Mariah England, Esq. (*pro hac vice*)
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801

*Counsel for the Federal WARN Act Claimants*

| | |
|---|---|
| **In re:**<br><br>**BAKER & TAYLOR, LLC,**<br><br>**Debtor.** | **Chapter 11**<br><br>**Case No. 26-bk-12863**<br><br>**Hon. Christine M. Gravelle** |

## LIMITED OBJECTION OF THE FEDERAL WARN ACT CLAIMANTS TO CONFIRMATION OF THE CHAPTER 11 LIQUIDATING PLAN OF BAKER & TAYLOR, LLC (ECF NO. 154) AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT (ECF NO. 166)

Sheryl Martin, Kelly Edwards, Rashard Page, Neli Camacho-Perez, and Jerri Fout, individually and on behalf of all others similarly situated (collectively, the "WARN Claimants"), by their undersigned counsel, submit this limited objection (the "Objection") to confirmation of the *Chapter 11 Liquidating Plan of Baker & Taylor, LLC* (ECF No. 154) (the "Plan") and to final approval of the related *Disclosure Statement* (ECF No. 166) (the "Disclosure Statement"). In support, the WARN Claimants state as follows:

## PRELIMINARY STATEMENT

1. The WARN Claimants hold filed claims totaling $8,086,000, of which $5,986,000 is asserted as wage priority under 11 U.S.C. § 507(a)(4). The Debtor disputes those claims, and the dispute is pending in this Court in *Edwards v. Baker & Taylor, LLC*, Adv. Pro. No. 26-01148. To counsel's knowledge, the Debtor has not answered the complaint or objected to any WARN claim on file with the claims agent. The Debtor's motion to dismiss the adversary proceeding remains pending.

2. The Plan nonetheless declares that WARN Act Claims are "not entitled to any distributions," deems itself a Rule 9019 compromise of "all Claims," and provides that all claims are "fixed, adjusted, or compromised" upon confirmation. Read together, those provisions invite the Debtor or Plan Administrator to argue later that confirmation resolved the WARN claims at zero, without an objection, an evidentiary record, or any consideration to the WARN Claimants.

3. The Plan also (a) deems an impaired class to accept the Plan if no member votes, contrary to 11 U.S.C. § 1126(c); and (b) forces every creditor entitled to vote, including those who reject the Plan, to release the Debtor and non-debtor third parties, with no opt-out. The Supreme Court has barred such nonconsensual third-party releases. *See Harrington v. Purdue Pharma L.P.,* 603 U.S. 204, 227 (2024) (the Code does not authorize a release that "effectively seeks to discharge claims against a nondebtor without the consent of affected claimants.")

4. In addition, (c) the release of the Debtor operates as a discharge that 11 U.S.C. § 1141(d)(3) forbids in this liquidating case. Most fundamentally, (d) the Plan pays wage-priority claims only a pro rata share of whatever cash remains, not the full payment that 11 U.S.C. § 1129(a)(9)(B) requires. In the Debtor's own liquidation analysis, priority non-tax claims would recover roughly 8 to 9 cents on the dollar.

5. Defects (a) through (c) can be cured with targeted language, which the WARN Claimants propose below. Defect (d) cannot be cured by drafting: unless the Plan pays allowed wage-priority claims in full, it cannot be confirmed.

## BACKGROUND

### A. The WARN Claims

6. On October 6, 2025, the Debtor separated approximately 600 of its 950 employees. Disclosure Statement at 6. On October 15, 2025, former employees commenced putative class actions under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101–2109, in the Northern Districts of Illinois and Georgia. *Id.* at 7 & n.9.

7. The Debtor filed its Chapter 11 petition on March 16, 2026. On March 23, 2026, Kelly Edwards commenced Adv. Pro. No. 26-01148 on behalf of herself and a putative multi-state class (the "Adversary Proceeding"). The Debtor has not answered the complaint; instead, it has filed a pending motion to dismiss. *See* Adv. Pro. No. 26-01148, ECF No. 15.

8. The WARN Claimants timely filed the following proofs of claim on or before the General Claims Bar Date:

| Claim No. | Claimant | Amount | § 507(a)(4) Priority | Notes |
|---|---|---|---|---|
| 234 | Martin, *et al.* and those similarly situated | $8,086,000.00 | $5,986,000.00 | Class claim |
| 235 | Jerri Fout | $7,796.80 | $7,796.80 | Original claim |
| 237 | Rashard Page | $12,689.60 | $12,689.60 | Amends Claim No. 4 (filed 3/26/2026) |
| 238 | Neli Camacho-Perez | $7,321.60 | $7,321.60 | Amends Claim No. 5 (filed 3/26/2026) |

| Claim No. | Claimant | Amount | § 507(a)(4) Priority | Notes |
|---|---|---|---|---|
| 236 | Sheryl Martin | $7,321.60 | $7,321.60 | Amends Claim No. 6 (filed 3/26/2026) |
| 241 | Kelly Edwards | $5,779.95 | $5,779.95 | Amends Claim No. 3 (filed 03/26/2026) |

9. The Disclosure Statement lists WARN Act Claims as asserted at $7,900,000, with an estimated allowed amount of $800,000 and an "[Unknown]" recovery. Disclosure Statement at 3 & n.6.

**B. The Challenged Plan Provisions**

10. *Class 2 treatment.* Section 4.02(b) provides that "[t]he Debtor disputes its liability for WARN Act Claims and submits that WARN Act Claims are not entitled to any distributions under the Plan."

11. *Plan-wide compromise.* Section 5.07 provides that the Plan "shall constitute a good faith compromise and settlement of all Claims, Interests, and controversies," that the Plan "shall be deemed a motion" under Bankruptcy Rule 9019, and that entry of the Confirmation Order constitutes approval of that compromise.

12. *Binding effect and waiver.* Section 10.01 provides that "[a]ll Claims and Interests shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a Claim or Interest has voted on the Plan." Section 12.11 deems each holder to have waived arguments about the amount or priority of its claim based on undisclosed agreements.

13. *Claims administration.* Section 7.01(a) automatically disallows any claim filed after the applicable bar date. Section 7.01(b) permits the Plan Administrator to settle any Disputed Claim without notice or court approval.

14. *Deemed acceptance.* Section 3.04 provides that if a voting class "contains Claims eligible to vote and no holder ... votes to accept or reject the Plan, the Plan shall be deemed accepted by such Class."

15. *Releases.* "Releasing Parties" include "all holders of Claims or Interests that are entitled to vote on the Plan," together with their attorneys, agents, and representatives. Plan § 1.01(tt). Each Releasing Party releases the Debtor from "any and all claims ... whatsoever," excepting only post-Effective Date Plan obligations. Plan § 10.04(a). The Released Parties include the Committee, its members, and their professionals. Plan § 1.01(ss). Section 10.06 permanently enjoins pursuit of all released claims. No opt-out is provided.

## OBJECTIONS

### I. The Plan Cannot Disallow, Estimate, or Compromise the WARN Claims Through Confirmation

16. *A filed claim is allowed unless and until the Court sustains an objection.* A claim filed under section 501 "is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a). Disallowance requires an objection and "notice and a hearing." 11 U.S.C. § 502(b); Fed. R. Bankr. P. 3007. A properly filed claim is *prima facie* evidence of its validity and amount. Fed. R. Bankr. P. 3001(f). No objection to any WARN claim has been filed, and the merits are already before this Court in the Adversary Proceeding. Confirmation of a plan does not override a filed proof of claim absent compliance with the claim-objection process. *See In re Garvida*, 347 B.R. 697, 703–04 (B.A.P. 9th Cir. 2006). The WARN Claimants therefore raise it now.

17. *A plan declaration is not a claim objection.* Section 4.02(b) states the Debtor's litigation position: that WARN Act Claims "are not entitled to any distributions." That position belongs in an answer or a Rule 3007 objection, tested on evidence. It has no place in the operative treatment of a class such as presented here. Left in, it lets the Plan Administrator argue, after confirmation, that the Plan itself fixed Class 2's entitlement at zero.

18. *Section 5.07 is not a compromise of the WARN claims.* A plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate." 11 U.S.C. § 1123(b)(3)(A). By its terms, that provision reaches claims the estate holds, not creditors' claims against the estate. And any settlement requires a counterparty and consideration, and its approval requires that the Court be informed of "all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). In this Circuit, the Court weighs the probability of success, likely collection difficulties, the complexity and expense of the litigation, and the paramount interest of creditors. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). The WARN Claimants have agreed to nothing, receive nothing in exchange, and the record contains none of the facts *TMT Trailer* and *Martin* require. A "compromise" in which one side surrenders a $5.986 million priority claim for nothing is not a compromise.

19. *Section 10.01 compounds the problem.* By deeming "[a]ll Claims ... fixed, adjusted, or compromised ... pursuant to the Plan," section 10.01 converts section 4.02(b)'s litigation position and section 5.07's deemed settlement into binding terms. A confirmed plan binds all creditors. *See* 11 U.S.C. § 1141(a). Courts may enforce it even as to provisions that should not have been confirmed. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010).

*Espinosa* also confirms the Court's independent obligation to refuse confirmation of provisions that violate the Code. *Id.* at 277. The Court must resolve the ambiguity now, not litigate it after the Effective Date.

20. *Sections 7.01 and 12.11 must not be turned against the WARN claims.* Section 7.01(a)'s automatic disallowance of late claims must not be applied to putative class members covered by timely Claim No. 234. Section 7.01(b) lets the Plan Administrator settle any Disputed Claim without notice or court approval. Any settlement binding on the WARN Claimants or putative class members must instead be approved under Bankruptcy Rule 9019 and, as applicable, Rule 7023(e). Section 12.11's waiver should be clarified as inapplicable to the WARN claims.

21. *Requested relief.* The WARN Claimants request that section 4.02(b)'s first sentence be stricken, and that the Confirmation Order includes the following:

> *Notwithstanding anything to the contrary in the Plan, the Disclosure Statement, or this Confirmation Order, including Sections 4.02, 5.07, 7.01, 10.01, 10.04, 10.06, and 12.11 of the Plan: (a) nothing in the Plan or this Confirmation Order shall constitute a determination, adjudication, estimation, settlement, compromise, release, or waiver of the validity, allowance, amount, classification, or priority of any WARN Act Claim, including Claim Nos. 4, 5, 6, 234, 235, 236, 237, 238, and 241 (the "WARN Claims"); (b) the WARN Claims shall be allowed or disallowed only by Final Order entered after an objection under Bankruptcy Rule 3007 or in Adv. Pro. No. 26-01148 (the "Adversary Proceeding"), or by a settlement approved by the Court under Bankruptcy Rule 9019 and, as applicable, Rule 7023(e); (c) the Adversary Proceeding, and all claims, defenses, and rights of the parties therein, are preserved and shall continue against the Liquidating Debtor, with the Plan Administrator substituted for the Debtor; (d) Claim No. 234 shall be deemed timely filed on behalf of each putative class member described therein pending a determination of class treatment, and Section 7.01(a) of the Plan shall not apply to any such class member; and (e) Section 12.11 of the Plan shall not apply to the WARN Claims.*

## II. Section 3.04's Deemed Acceptance of Non-Voting Impaired Classes Must Be Stricken

22. *The Code measures acceptance by votes actually cast.* An impaired class accepts a plan only if it is accepted by creditors holding at least two-thirds in amount and more than one-half in number "of the allowed claims of such class held by creditors ... that have accepted or rejected such plan." 11 U.S.C. § 1126(c). If no one votes, that test cannot be met.

23. *The Code's only deeming rules point the other way.* Congress deemed acceptance only for unimpaired classes, 11 U.S.C. § 1126(f), and deemed rejection for classes receiving nothing, 11 U.S.C. § 1126(g). It provided no rule deeming an impaired class to accept through silence. Courts have accordingly refused to treat silence as acceptance. *See, e.g.*, *In re Vita Corp.*, 358 B.R. 749 (Bankr. C.D. Ill. 2007), *aff'd*, 380 B.R. 525, 528 (C.D. Ill. 2008). Class 2 is impaired. *See* Plan § 4.02(c).

24. *Deemed acceptance would carry real consequences here.* Section 3.04 could be used to manufacture:

- acceptance by Class 2 under section 1129(a)(8);
- the impaired accepting class that section 1129(a)(10) requires; and
- the class acceptance that, under section 1129(a)(9)(B)(i), permits deferred payment of § 507(a)(4) wage claims instead of full cash payment on the Effective Date under section 1129(a)(9)(B)(ii).

None of these may rest on silence.

25. *Class 2 is especially vulnerable.* Its members are several hundred former employees, terminated a year ago, many of whom have moved. No class has been certified, and the solicitation procedures have not yet been filed. Disclosure Statement, Ex. B. A low or zero turnout in Class 2 would reflect logistics, not assent.

26. *Requested relief.* Section 3.04 should be stricken. Alternatively, the Confirmation Order should provide that Section 3.04 does not apply to Class 2 or to the priority portion of any WARN Claim, and that no class shall be deemed to accept the Plan for purposes of sections 1129(a)(8), 1129(a)(9)(B), or 1129(a)(10). The WARN Claimants further reserve the right to seek temporary allowance of Claim No. 234 for voting purposes under Bankruptcy Rule 3018(a) once solicitation procedures are proposed.

## III. The Plan's Releases and Injunction Cannot Be Approved

### A. The Releases Are Imposed Without Consent

27. *Every voting creditor is bound, whatever it does.* "Releasing Parties" include "all holders of Claims or Interests that are entitled to vote on the Plan." Plan § 1.01(tt)(ii). That captures every holder in Classes 1, 2, and 3, including those who vote to reject, those who object, and those who never return a ballot. The Plan offers no opt-in and no opt-out. The definition also sweeps in each holder's "attorneys," "agents," and "representatives." Plan § 1.01(tt)(iv).

28. *The releases reach non-debtors.* Section 10.04(a) releases "any derivative claims asserted or that may be asserted on behalf of the Debtor or its estate, that such Releasing Party would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any claim or interest." Because the provision extends to claims a Releasing Party could assert "in their own right," it is at best ambiguous whether it reaches creditors' direct claims. Section 10.06 then permanently enjoins the Releasing Parties from pursuing any released claim "against the Released Parties and the Exculpated Parties." Those parties include the Committee, its members, the Debtor's and Committee's professionals, and the Debtor's officers, directors, and employees. Plan §§ 1.01(bb), (ss). To the extent these provisions bar creditors' direct claims against any non-debtor, they are third-party releases.

29. *Nonconsensual third-party releases are not authorized.* The Bankruptcy Code does not authorize a plan release and injunction that effectively discharges claims against a non-debtor without the consent of affected claimants. *See Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 227 (2024). *Purdue* left open what counts as consent. *Id.* at 226. But a release imposed on creditors who vote to reject, with no mechanism to decline, involves no consent at all. Even courts that have accepted opt-out mechanisms after *Purdue* refuse to bind creditors who reject the plan. *See In re Pat McGrath Cosmetics LLC*, 679 B.R. 591, 601 (Bankr. S.D. Fla. 2026) (holding that a party "who rejects a plan ... cannot be bound to a release provision in the absence of expressly opting out"); *see also Patterson v. Mahwah Bergen Retail Grp., Inc.*, 636 B.R. 641, 685–86 (E.D. Va. 2022).

30. *The release of the Debtor binds non-creditors too.* Because the definition reaches each holder's attorneys and agents, it purports to make the WARN Claimants' counsel release their own claims against the Debtor, without notice to them as releasors or any consideration. Nothing in the Code permits a plan to bind non-creditors to a release in this way.

**B. The Creditor Release of the Debtor Is a Discharge the Code Forbids**

31. *No discharge is available.* Confirmation does not discharge a debtor where the plan liquidates all or substantially all estate property, the debtor does not engage in business after consummation, and the debtor would be denied a discharge under section 727(a). *See* 11 U.S.C. § 1141(d)(3). A non-individual is denied a Chapter 7 discharge. *See* 11 U.S.C. § 727(a)(1). The Plan concedes the point: "confirmation of the Plan shall not discharge the Debtor." Plan § 10.06.

32. *Section 10.04(a) does what section 1141(d)(3) prohibits.* A discharge relieves the debtor of pre-confirmation debts and enjoins their collection. *See* 11 U.S.C. §§ 524(a), 1141(d)(1). Section 10.04(a) has every creditor release the Debtor from "any and all claims ... whatsoever,"

and section 10.06 enjoins their pursuit. The carve-out reaches only "post-Effective Date obligations ... under the Plan." The result is a discharge in all but name. A plan provision cannot indirectly accomplish what the Code directly forbids.

33. *The release threatens the WARN claims themselves.* The WARN Claims are claims against the Debtor. The Adversary Proceeding is a "suit" against the Debtor. Unless clarified, the release and injunction could be invoked to argue that the Adversary Proceeding must be dismissed. They could also be used to argue that any allowed WARN claim is enforceable only to the extent of whatever the Plan Administrator elects to distribute.

34. *Requested relief.* The WARN Claimants request that:

1. Section 1.01(tt)(ii)–(iv) be stricken, or the releases be made effective only as to holders who affirmatively opt in on their ballots;

2. Section 10.04(a) be stricken or, at minimum, the Confirmation Order provide that no holder of a WARN Claim, and none of their counsel, is a Releasing Party; and

3. The Confirmation Order provides:

> *Nothing in the Plan or this Confirmation Order, including Sections 10.04, 10.05, and 10.06 of the Plan, shall (a) release, enjoin, or otherwise impair the WARN Claims, the prosecution of the Adversary Proceeding, or the enforcement of any WARN Claim allowed by Final Order against the Debtor, the Liquidating Debtor, or property of the estate; or (b) release, enjoin, or otherwise impair any claim of any holder of a WARN Claim against any non-debtor, including BTAC Holding Corp. and Amandeep S. Kochar.*

## IV. The Plan Does Not Pay Wage-Priority Claims in Full, as Section 1129(a)(9)(B) Requires

35. *The statute requires full payment.* Unless a holder agrees to different treatment, each holder of a claim of a kind specified in section 507(a)(4) or (a)(5) must receive either: (i) if the class has accepted the plan, deferred cash payments of a value, as of the effective date, equal

to the allowed amount of the claim; or (ii) if the class has not accepted, "cash on the effective date of the plan equal to the allowed amount of such claim." 11 U.S.C. § 1129(a)(9)(B). Cramdown does not excuse this requirement. Section 1129(b)(1) applies only if "all of the applicable requirements of subsection (a) ... other than paragraph (8)" are met. Courts in this District enforce the requirement as written. *See In re Diocese of Camden*, 653 B.R. 309, 343 (Bankr. D.N.J. 2023) (section 1129(a)(9) requires "payment in full in cash [on the effective date of the plan]" unless the holder agrees to different treatment) (citation omitted).

36. *The WARN Claims are wage-priority claims.* WARN damages are back pay for each day of violation, plus the value of lost benefits. 29 U.S.C. § 2104(a)(1). The terminations occurred on October 6, 2025, within 180 days before the March 16, 2026, petition date. 11 U.S.C. § 507(a)(4). Courts treat WARN back pay as wages entitled to priority under section 507(a)(4). *See In re United Furniture Indus., Inc.*, 672 B.R. 297, 305 (Bankr. N.D. Miss. 2025); *see also Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 459 (2017) (noting that $8.3 million of the workers' WARN judgment "counts as a priority wage claim under 11 U.S.C. § 507(a)(4)"); *In re Hanlin Grp., Inc.*, 176 B.R. 329, 333–34 (Bankr. D.N.J. 1995) (holding that WARN back pay constitutes "wages" under the Bankruptcy Code and is "earned" at termination). The WARN Claimants assert $5,986,000 in § 507(a)(4) priority, and each individual claim falls below the $17,150 statutory cap. *See* ¶ 8, *supra*.

37. *The Plan pays a pro rata share, not the allowed amount.* Under section 4.02(b), the priority portion of an allowed WARN Claim receives "the same treatment afforded to Allowed Priority Non-Tax Claims under Class 1." Class 1 receives only "a pro rata share of distributions of Cash from available assets, after payment in full of all Allowed Administrative Claims and Priority Tax Claims." Plan § 4.01(b). That is neither cash equal to the allowed amount on the Effective

Date nor deferred payments with that present value. It is a share of an undefined pool, with no commitment that the pool will be enough.

38. *On the Debtor's own numbers, the pool is nowhere near enough.* The Debtor's figures show:

| Item | Amount | Source |
|---|---|---|
| Estimated liquidation value of all assets | $1,661,460.83 | Disclosure Statement, Ex. D |
| Less: estimated allowed Administrative Claims | ($90,000.00) | Disclosure Statement at 2 |
| Less: estimated Professional Fees | ($750,000.00) | Disclosure Statement at 2 |
| Less: estimated allowed Priority Tax Claims | ($35,709.81) | Disclosure Statement at 2 |
| Remaining for Priority Non-Tax Claims | $785,751.02 | Derived |
| Estimated Priority Non-Tax Claims | $9,200,000.00 | Disclosure Statement, Ex. D |
| Implied recovery on Priority Non-Tax Claims | about 8.5% | Derived |

This calculation is generous to the Debtor. It excludes post-Effective Date wind-down and Plan Administrator costs, and it assumes the Debtor prevails on more than $679,000 in disputed administrative claims. The Disclosure Statement offers no plan-case projection showing a better result, and lists the Class 1 and Class 2 recoveries as "[Unknown]." Disclosure Statement at 2–3.

39. *Class acceptance cannot cure the shortfall.* Class acceptance under section 1129(a)(9)(B)(i) permits only deferral of payment. It does not permit payment of less than the allowed amount in present value. Only an individual holder's agreement can do that, and the

WARN Claimants have not agreed. Nor can a deemed acceptance under section 3.04 supply the class acceptance that subsection (B)(i) requires. *See* Part II, *supra*.

40. *The Debtor's dispute of the claims does not excuse compliance.* Section 1129(a)(9) protects allowed claims. A plan that cannot pay allowed disputed priority claims in full does not satisfy it. At a minimum, the Plan must reserve, on the Effective Date, enough cash to pay the disputed priority claims in full if allowed. Section 7.01(d) does not do so. It reserves only against distributions to "the same or junior Classes," and Class 1 is numbered ahead of Class 2. Courts in this District examine whether a plan reserves enough to pay disputed priority claims in full. *See Diocese of Camden*, 653 B.R. at 344. The objectors in *Diocese of Camden* lost because they could not establish the size of their claims. *Id.* at 347. By contrast, the WARN Claimants have filed claims asserting $5,986,000 in priority.

41. *The same shortfall defeats feasibility.* The Disclosure Statement asserts that a liquidating plan is "exempt from the feasibility test under section 1129(a)(11)." Disclosure Statement at 38. It is not. Section 1129(a)(11)'s parenthetical excuses only a liquidation that the plan itself proposes. The proponent must still show that the plan can make the payments it requires, including those that section 1129(a)(9) mandates. There must be "a reasonable probability the provisions of the Plan can be performed." *In re G-I Holdings Inc.*, 420 B.R. 216, 267 (D.N.J. 2009). Even for a liquidating plan, the question is whether what the plan requires can be done "as a practical matter." *In re Farwest Pump Co.*, 621 B.R. 871, 895 (Bankr. D. Or. 2019). The Debtor's own figures show it cannot.

42. *Wage-priority claims also rank ahead of other priority claims.* Class 1 pays all Priority Non-Tax Claims pro rata, without regard to the order of priority in section 507(a). Claims under section 507(a)(4) rank ahead of claims under sections 507(a)(5) through (a)(7). The Plan

must honor that order in any distribution short of full payment. The Court "cannot confirm a plan that contains priority-violating distributions over the objection of an impaired creditor class." *Jevic*, 580 U.S. at 457.

43. *Requested relief.* The Plan cannot be confirmed unless it is amended to:

1. pay each holder of an allowed § 507(a)(4) or (a)(5) claim, including the priority portion of each WARN Claim, cash on the Effective Date equal to the allowed amount, or, only upon actual acceptance by the relevant class, deferred cash payments of equal present value;

2. establish and fund on the Effective Date a reserve equal to the full asserted priority amount of the disputed WARN Claims, or such amount as the Court estimates under 11 U.S.C. § 502(c) after notice and a hearing in which the WARN Claimants participate, before any distribution on account of Class 1 or Class 3 Claims;

3. prohibit any distribution to Class 3 until all allowed priority claims are paid in full; and

4. distribute to priority claims in the order prescribed by section 507(a).

## RESERVATION OF RIGHTS

44. This Objection is limited to the matters stated. The WARN Claimants reserve all rights to supplement or amend it and to join in any other party's objection. They also reserve all rights to raise further objections at or before the Combined Hearing, including further objections under 11 U.S.C. §§ 1125 and 1129(a)(11) and objections to the disputed-claims reserve, plan governance, exculpation, and distribution provisions.

45. The WARN Claimants further reserve the right to seek application of Bankruptcy Rule 7023 and temporary allowance of Claim No. 234 under Rule 3018(a). Nothing in this

Objection waives any claim, right, or remedy of the WARN Claimants or any putative class member, in this case, the Adversary Proceeding, or any other forum.

## CONCLUSION

WHEREFORE, the WARN Claimants respectfully request that the Court deny confirmation of the Plan and final approval of the Disclosure Statement unless the Plan and Confirmation Order are modified as set forth above, and grant such other relief as is just.

Dated: October 13, 2026

Respectfully submitted,

**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO, P.C.**

*/s/ Jason H. Alperstein*
Jason H. Alperstein, Esq.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700
jalperstein@carellabyrne.com

– and –

**STRANCH, JENNINGS & GARVEY, PLLC**
J. Gerard Stranch IV (pro hac vice)
Mariah England (pro hac vice)
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
gstranch@stranchlaw.com
mengland@stranchlaw.com

*Counsel for the Federal WARN Act Claimants*