| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>OFFIT KURMAN, P.A.<br>By: Paul J. Winterhalter, Esq. (006961986)<br>Court Plaza South<br>21 Main Street, Suite 158<br>Hackensack, NJ 07601<br>Telephone: (267) 338-1370<br>Facsimile: (267) 338-1335<br>E-mail: pwinterhalter@offitkurman.com<br><br>*Counsel for the Debtor* | |
| IN RE:<br><br>BAKER & TAYLOR, LLC,<br><br>Debtor | Case No.: 26-12863<br>Judge: Christine M. Gravelle<br>Chapter 11 |

**DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DESCRIBING CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE DEBTOR**

**PLEASE READ THIS DISCLOSURE STATEMENT CAREFULLY. THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THIS PLAN OF LIQUIDATION. THE PLAN PROPONENT BELIEVES THAT THIS PLAN IS IN THE BEST INTEREST OF CREDITORS AND THAT THE PLAN IS FAIR AND EQUITABLE. THE PLAN PROPONENT URGES THAT THE VOTER ACCEPT THE PLAN.**

**DISCLAIMER**

THIS DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN PROVISIONS OF THE DEBTOR'S PLAN AND CERTAIN OTHER DOCUMENTS AND FINANCIAL INFORMATION. THE INFORMATION INCLUDED IN THIS DISCLOSURE STATEMENT IS PROVIDED FOR THE PURPOSE OF SOLICITING ACCEPTANCES OF THE PLAN AND SHOULD NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER AND HOW TO VOTE ON THE PLAN. THE DEBTOR BELIEVES THAT THESE SUMMARIES ARE FAIR AND ACCURATE. THE SUMMARIES OF THE FINANCIAL INFORMATION AND THE DOCUMENTS ATTACHED TO, OR INCORPORATED BY REFERENCE IN, THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO SUCH INFORMATION AND DOCUMENTS. IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THE DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR THE OTHER DOCUMENTS INCORPORATED IN THE DISCLOSURE STATEMENT BY REFERENCE, THE PLAN OR THE OTHER DOCUMENTS SHALL GOVERN FOR ALL PURPOSES.

THE FINANCIAL INFORMATION CONTAINED IN OR INCORPORATED BY REFERENCE INTO THE DISCLOSURE STATEMENT HAS NOT BEEN AUDITED, UNLESS SPECIFICALLY INDICATED OTHERWISE. THE STATEMENTS AND FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAVE BEEN MADE AS OF THE DATE OF THE DISCLOSURE STATEMENT UNLESS OTHERWISE SPECIFIED. HOLDERS OF CLAIMS REVIEWING THE DISCLOSURE STATEMENT SHOULD NOT ASSUME AT THE TIME OF SUCH REVIEW THAT THERE HAVE BEEN NO CHANGES IN THE FACTS SET FORTH IN THE DISCLOSURE STATEMENT SINCE THE DATE OF THIS DISCLOSURE STATEMENT. EACH HOLDER OF A CLAIM ENTITLED TO VOTE ON THE PLAN SHOULD CAREFULLY REVIEW THIS DISCLOSURE STATEMENT IN ITS ENTIRETY BEFORE CASTING A BALLOT. THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. ANY ENTITIES DESIRING ANY SUCH ADVICE SHOULD CONSULT WITH THEIR OWN ADVISORS.

NO REPRESENTATIONS CONCERNING THE DEBTOR HAVE BEEN AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE DOCUMENTS ATTACHED TO THIS DISCLOSURE STATEMENT. ANY INFORMATION, REPRESENTATIONS, OR INDUCEMENTS MADE TO OBTAIN AN ACCEPTANCE OF THE PLAN WHICH ARE OTHER THAN AS SET FORTH, OR INCONSISTENT WITH, THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, THE DOCUMENTS ATTACHED TO THE DISCLOSURE STATEMENT, AND THE PLAN SHOULD NOT BE RELIED UPON BY ANY HOLDER OF A CLAIM.

WITH RESPECT TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER PENDING, THREATENED, OR POTENTIAL LITIGATION OR OTHER ACTIONS, THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION, OR WAIVER,

BUT RATHER AS A STATEMENT MADE IN THE CONTEXT OF SETTLEMENT NEGOTIATIONS PURSUANT TO RULE 408 OF THE FEDERAL RULES OF EVIDENCE. PLEASE REFER TO ARTICLE VI AND ARTICLE VII OF THIS DISCLOSURE STATEMENT FOR A DISCUSSION OF CERTAIN RISK FACTORS AND U.S. FEDERAL TAX CONSEQUENCES THAT SHOULD BE CONSIDERED WHEN VOTING ON THE PLAN.

**PLEASE NOTE THAT THE APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A RULING ON THE MERITS, FEASIBILITY OR DESIRABILITY OF THE PLAN.**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ....................................................................................................1

**A.** Purpose of This Document.............................................................................1

**B.** The Chapter 11 Plan of Liquidation...............................................................2

**C.** Confirmation Procedures. ...............................................................................3

**1.** Persons Potentially Eligible to Vote on the Plan.........................................3

**2.** Hearing on Confirmation of the Plan. .........................................................3

**3.** Deadline for Objecting to Confirmation of the Plan. ..................................4

**4.** Voting on the Plan.........................................................................................4

**5.** Identity of Person to Contact for More Information Regarding the Plan.........................................................................................................5

II. BACKGROUND OF THE DEBTOR AND THE CHAPTER 11 CASE ..........................5

**A.** Description and History of the Debtor's Business. ........................................5

**B.** Events Leading to the Chapter 11 Filing.........................................................6

**C.** Significant Events During the Bankruptcy Case. ............................................7

**1.** First Day Motions............................................................................................7

**2.** Retention of Professionals. ............................................................................8

**3.** Appointment of the Official Committee of Unsecured Creditors and Commencement of Committee Investigation.......................................8

**4.** Adversary Proceedings by WARN Act Plaintiffs. ......................................8

**5.** Rejection of Leases of Real Property by the Debtor...................................9

**6.** Schedules and Statements and Bar Date Order...........................................9

**D.** The Debtor's Assets. .......................................................................................10

**1.** Available Assets...........................................................................................10

**2.** Additional Potential Assets. .........................................................................11

III. SUMMARY OF THE PLAN OF LIQUIDATION ........ 11

**A.** What Creditors and Interest Holders Will Receive Under the Proposed Plan. ........ 11

**1.** Unclassified Claims. ........ 12

**a.** Administrative Claims. ........ 12

**b.** Professional Fees. ........ 13

**c.** Priority Tax Claims. ........ 13

**d.** U.S. Trustee Fees. ........ 13

**2.** Classification of Claims and Interests ........ 13

**a.** Classification in General. ........ 13

**b.** Classification of Claims and Interests ........ 14

**c.** Elimination of Vacant Classes. ........ 14

**d.** Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code. ........ 14

**3.** Treatment of Claims and Interests. ........ 14

**a.** Class 1 – Priority Non-Tax Claims. ........ 14

**b.** Class 2 – WARN Act Claims ........ 15

**c.** Class 3 – Unsecured Claims. ........ 15

**d.** Class 4 – Interests. ........ 15

**B.** Means for Implementation of the Plan ........ 15

**1.** Revesting of Assets/Payments to Holders of Allowed Claims. ........ 15

**2.** The Plan Administrator and Oversight Committee. ........ 16

**a.** Plan Administrator. ........ 16

**b.** Powers of the Plan Administrator. ........ 16

**c.** Plan Administrator Reserve. ........ 17

**d.** The Oversight Committee. ........ 17

**e.** Implementation. ....................................................................17

**f.** Corporate Governance. ....................................................................18

**g.** Compromise of Controversies. ....................................................................18

**h.** Effectuating Documents; Further Transactions. ....................................................................18

**i.** Access to Debtor's Books and Records After the Effective Date. ....................................................................19

**C.** Distributions....................................................................20

**1.** Distributions, Generally. ....................................................................20

**2.** Allocation of Plan Distributions Between Principal and Interest. ....................................................................20

**3.** No Postpetition Interest on Claims. ....................................................................20

**4.** Date of Distributions. ....................................................................20

**5.** Distribution Record Date. ....................................................................21

**6.** Delivery of Distributions. ....................................................................21

**7.** Manner of Payment Under Plan. ....................................................................21

**8.** Unclaimed Property. ....................................................................21

**9.** De Minimis Distributions. ....................................................................22

**10.** Setoff and Recoupment. ....................................................................22

**11.** Withholding and Reporting Requirements. ....................................................................22

**12.** Claims Paid or Payable by Third Parties. ....................................................................22

**a.** Claims Paid by Third Parties. ....................................................................22

**b.** Insurance Recovery. ....................................................................23

**c.** Applicability of Insurance Policies. ....................................................................23

**D.** Procedures for Resolving Claims....................................................................23

**1.** Objections to Claims and Settlements; Treatment of Disputed Claims. ....................................................................23

**2.** Preservation of Causes of Action. ....................................................................24

**E.** Executory Contracts and Unexpired Leases. ....24

**1.** General Treatment. ....24

**2.** Claims Based on Rejection of Executory Contracts or Unexpired Leases. ....25

**3.** Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. ....25

**4.** Reservation of Rights. ....26

**5.** Postpetition Contracts and Leases. ....26

**F.** Conditions Precedent to Consummation of the Plan. ....26

**1.** Conditions Precedent to Confirmation ....26

**2.** Conditions Precedent to the Effective Date. ....26

**3.** Waiver of Conditions Precedent; Bankruptcy Rule 3020(e) Automatic Stay ....26

**4.** Effect of Failure of Conditions. ....27

**G.** Effect Of Confirmation. ....27

**1.** Binding Effect of the Plan. ....27

**2.** Vesting of Assets. ....27

**3.** Term of Pre-Confirmation Injunctions or Stays. ....27

**4.** Releases, Exculpations, and Injunctions. ....28

**5.** Reservation of Rights. ....32

IV. Retention of Jurisdiction. ....32

**A.** Miscellaneous Provisions ....33

**1.** Exemption from Certain Transfer Taxes. ....33

**2.** Substantial Consummation. ....33

**3.** Modifications and Amendments. ....34

**4.** Revocation or Withdrawal of the Plan. ....34

**5.** Severability. ....................................................................................34

**6.** Additional Documents. ..............................................................................35

**7.** Governing Law. ........................................................................................35

**8.** Successors and Assigns...............................................................................35

**9.** Notices. ......................................................................................................35

**10.** Reservation of Rights..............................................................................36

**11.** Waiver or Estoppel. .................................................................................36

V. CONFIRMATION REQUIREMENTS AND PROCEDURES .......................................36

**A.** Voting on the Plan. ..........................................................................................37

**1.** Who May Vote on the Plan.........................................................................37

**2.** Voting on the Plan. ....................................................................................37

**3.** Who Is Not Entitled to Vote on the Plan. ..................................................37

**4.** Votes Necessary to Confirm the Plan. ......................................................38

**5.** Treatment of Nonaccepting Classes..........................................................38

**B.** Best Interests of Creditors.................................................................................39

**C.** Feasibility..........................................................................................................39

VI. ALTERNATIVES TO CONFIRMATION OF A CHAPTER 11 PLAN..........................39

**A.** Liquidation Under Chapter 7. ...........................................................................39

**B.** Alternative Chapter 11 Plan...............................................................................40

**C.** Dismissal of the Bankruptcy Case. ...................................................................40

VII. RISK FACTORS ASSOCIATED WITH THE PLAN.....................................................40

**A.** Business and Financial Risk Factors; Certain Bankruptcy Considerations. ..........40

**1.** Satisfaction of Claims After the Effective Date by the Liquidating Debtor. ..........................................................................................................40

**2.** Delay in Confirmation of the Plan May Result in Significant Costs.........40

**3.** Parties in Interest May Object to Confirmation of the Plan.......................41

**4.** Risk of Non-Occurrence of the Effective Date. ........................................41

**5.** Failure to Satisfy Vote Requirements. ........................................41

**6.** The Debtor May Not Have Sufficient Liquidity to Confirm the Plan. ........................................41

**B.** Other Risk Factors ........................................41

VIII. TAX CONSEQUENCES OF THE PLAN ........................................42

**A.** Consequences to Holders of Unsecured Claims. ........................................42

**B.** Accrued Interest and OID. ........................................42

**C.** Information Reporting and Backup Withholding. ........................................42

IX. RECOMMENDATION ........................................43

**EXHIBITS**

**A.** *First Amended Chapter 11 Liquidating Plan of Baker & Taylor, LLC (Technical Modifications)*

**B.** *Order (I) Approving the Disclosure Statement; (II) Scheduling a Hearing on Plan Confirmation and Setting Deadlines Related Thereto; (III) Approving the Solicitation, Notice, and Tabulation Procedures and Forms; and (IV) Granting Related Relief*

**C.** List of Asserted Administrative Claims

**D.** Liquidation Analysis

# I. INTRODUCTION

Baker & Taylor, LLC (the "***Debtor***" or "***Baker & Taylor***") is the Debtor in the present Bankruptcy Case.[1] On March 16, 2026 (the "***Petition Date***"), the Debtor commenced the Bankruptcy Case by filing a voluntary petition under chapter 11 of Title 11 of the United States Code (the "***Bankruptcy Code***"), 11 U.S.C. § 101, *et seq.* Chapter 11 of the Bankruptcy Code allows a debtor, and under some circumstances, creditors and other parties in interest, to propose a plan to complete the orderly liquidation of the debtor's remaining assets to pay claims against the estate. The Debtor has proposed such a plan (the "***Plan***"), which is enclosed in the same envelope as this document. **THE DOCUMENT THAT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE PLAN, WHICH IS ANNEXED HERETO AS EXHIBIT A.**

## A. Purpose of This Document.

Section 1125 of the Bankruptcy Code requires a disclosure statement to contain "adequate information" concerning a chapter 11 plan. The term "adequate information" is defined in Bankruptcy Code section 1125(a) as "information of a kind, and in sufficient detail," about a debtor and its operations "that would enable a hypothetical reasonable investor typical of holders of claims or interests" of the debtor to make an informed judgment about accepting or rejecting a chapter 11 plan.

This Disclosure Statement summarizes the contents of the Plan and provides information relating to the Plan and the process that the Bankruptcy Court follows to determine whether or not to confirm the Plan. The Disclosure Statement provides information relevant to your consideration of the Plan, including (i) who can vote or object, (ii) the proposed treatment of your Claim (*i.e.*, what your Claim will receive if the Plan is confirmed) and how this treatment compares to what you would receive in a chapter 7 liquidation, (iii) the history of the Debtor and significant events during the Bankruptcy Case, (iv) what the Bankruptcy Court will consider when deciding whether to confirm the Plan, (v) the effect of confirmation, and (vi) the feasibility of the Plan.

The Bankruptcy Court has entered an *Order (I) Approving the Disclosure Statement; (II) Scheduling a Hearing on Plan Confirmation and Setting Deadlines Related Thereto; (III) Approving the Solicitation, Notice, and Tabulation Procedures and Forms; and (IV) Granting Related Relief* [Docket No. **[●]**] (the "***Solicitation Procedures Order***"), attached hereto as **Exhibit B**, approving this document as containing adequate information for purposes of solicitation of acceptances of the Plan in accordance with Bankruptcy Code section 1125.

The Disclosure Statement is provided to each creditor whose Claim has been scheduled by the Debtor or who has filed a proof of claim against the Debtor and to each Interest holder of record as of the date of approval of this Disclosure Statement. Under the Bankruptcy Code, your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement prior to or concurrently with such solicitation.

[1] Unless otherwise defined in this Disclosure Statement, capitalized terms have the meanings set forth in the Chapter 11 Plan accompanying this Disclosure Statement.

### B. The Chapter 11 Plan of Liquidation.

The treatment of Claims and Interests under the Plan, along with voting rights and estimated recoveries for each Class, is summarized in the table below:

| Class | Description | Impaired/Entitled to Vote | Asserted Claims or Interest Amount (Estimated)[2] | Allowed Claims Amount (Estimated) | Estimated Percentage Recovery |
|---|---|---|---|---|---|
| Unclassified | Administrative Claims | Unclassified/Not Entitled to Vote | $769,042.97[3] | $90,000.00 | 100% |
| Unclassified | Professional Fees | Unclassified/Not Entitled to Vote | $750,000.00[4] | $750,000.00 | 100% |
| Unclassified | Priority Tax Claims | Unclassified/Not Entitled to Vote | $352,471.04[5] | $35,709.81 | [Unknown] |
| Class 1 | Priority Non-Tax Claims | Impaired/Entitled to Vote | [Unknown] | [Unknown] | [Unknown] |

2 The amounts reflected herein represent the aggregate asserted amounts of Claims based on filed proofs of claim and scheduled Claims, and do not necessarily reflect Allowed amounts. Certain Claims included in these totals may be contingent, unliquidated, disputed, or intercompany, and may ultimately be allowed in amounts materially different from those shown, or not allowed at all. These amounts are presented for illustrative purposes only to reflect the face amounts asserted for solicitation and voting purposes. The Debtor reserves all rights to object to any Claim and to amend these amounts based on further review of proofs of claim and the Debtor's books and records, and other known liabilities.

3 The Debtor has included as **Exhibit C** to this Disclosure Statement a list of asserted and potential Administrative Claims and the basis for disputing the allowance of such Administrative Claims.

4 The estimate of Professional Fees includes interim fees awarded, but unpaid, as of the date of this Disclosure Statement (approximately $330,000.00), together with an estimate of additional Professional Fees for which final fee applications will be filed (approximately $420,000.00). As it is likely that the Debtor will not have sufficient Cash on the Effective Date to satisfy Allowed Professional Fees in full, Offit Kurman, P.A. and Lowenstein Sandler, LLP have agreed to defer payment of a portion of their Allowed Professional Fees, which will be dependent on post-Effective Date recoveries (if any) by the Plan Administrator.

5 The asserted Priority Tax Claims include two disputed state and local tax Claims which the Debtor believes will be disallowed: (i) a Claim by Ashland County, Ohio for real estate taxes in the amount of $120,483.68 [Claim No. 110, duplicated at Claim No. 266], and (ii) a Claim for California sales taxes in the amount of $183,685.39 [Claim No. 152]. The Debtor believes that it has valid defenses to liability for the California sales taxes in question, and that it owes no real estate taxes to Ashland County, Ohio, having never owned real property in Ohio. Remaining Priority Tax Claims include (i) a Priority Tax Claim filed by the California Franchise Tax Board in the amount of $16,150.17 [Claim No.260], (ii) a Priority Tax Claim filed by the Texas Comptroller in the amount of $3,000.00 [Claim No. 62], (iii) a Priority Tax Claim filed by the New Jersey Department of Labor in the amount of $2,307.68 [Claim No. 3], and (iv) a Priority Tax Claim filed by the New York State Department of Tax and Finance for $28.96 in "LLC/PT" taxes [Claim No. 20]. The Debtor also estimates an additional $14,223.00 is due in unpaid 2025 state and local taxes for which returns were filed after the Petition Date.

| | | | | | |
|---|---|---|---|---|---|
| Class 2 | WARN Act Claims | Impaired/Entitled to Vote | $8,300,000.00[6] | $0.00 | [Unknown] |
| Class 3 | Unsecured Claims | Impaired/Entitled to Vote | $96,641,402.00 | $96,641,402.00 | [Unknown] |
| Class 4 | Interests | Impaired/Not Entitled to Vote | $0.00 | $0.00 | 0% |

## C. Confirmation Procedures.

### *1. Persons Potentially Eligible to Vote on the Plan.*

In determining acceptance of the Plan, votes will only be counted if submitted by a creditor whose Claim is duly scheduled by the Debtor as undisputed, non-contingent and unliquidated, or who, prior to the hearing on confirmation of the Plan, has filed with the Bankruptcy Court a proof of claim which has not been disallowed or suspended prior to computation of the votes on the Plan. The ballot form that you received does not constitute a proof of claim. If you are uncertain whether your Claim has been correctly scheduled, you should check the Debtor's schedules, which are on file at the Office of the Clerk of the United States Bankruptcy Court for the District of New Jersey, 402 East State Street, Trenton, New Jersey 08608. You may access a copy of the schedules on the website of the Debtor's agent for Claims and noticing in the case, Omni Agent Solutions, Inc. ("***Omni***") at the following link: https://omniagentsolutions.com/BakerTaylor. The Clerk of the Bankruptcy Court will not be able to provide this information by telephone.

**THE BANKRUPTCY COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE BANKRUPTCY COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.**

### *2. Hearing on Confirmation of the Plan.*

A hearing on confirmation of the Plan (the "***Confirmation Hearing***") is scheduled to be held before the Honorable Christine M. Gravelle on **December 8, 2026 at 2:00 p.m. (Eastern Time)** at the Bankruptcy Court, located at 402 East State Street, Trenton, New Jersey. The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement of the adjourned date made before or at the Confirmation Hearing or any adjournment thereof. Confirmation and effectiveness of the Plan are subject to certain material conditions precedent contained in Article IX of the Plan and described herein. There is no

[6] The estimated amount of WARN Act Claims is based on (i) amounts asserted in the Federal WARN Act Adversary Proceeding (defined below) by the putative classes of Federal WARN Act Plaintiffs (an approximately $6 million priority claim), and (ii) demands made in the New Jersey WARN Act Adversary Proceeding (defined below) by the New Jersey WARN Act Plaintiffs (an approximately $2.3 million priority claim). The Debtor disputes any liability in connection with the WARN Act Litigation.

assurance that the Plan will be confirmed, or if confirmed, that the conditions required to be satisfied will be satisfied or otherwise waived.

### *3. Deadline for Objecting to Confirmation of the Plan.*

The deadline to object to confirmation of the Plan is **December 1, 2026 at 4:00 p.m. (Eastern Time)** (the "***Plan Objection Deadline***"). All objections to the Plan must be filed with the Bankruptcy Court and served on the Debtor and certain other parties in interest in accordance with the Solicitation Procedures Order so that they are received on or before the Plan Objection Deadline.

### *4. Voting on the Plan.*

Under the Bankruptcy Code, not all holders of Claims against or Interests in the Debtor are entitled to vote on the Plan. Under the Plan, holders of Administrative Claims and Priority Tax Claims have not been classified for purposes of voting or receiving distributions, in accordance with section 1123(a)(1) of the Bankruptcy Code, and, therefore, are not entitled to vote on the Plan.

Priority Non-Tax Claims, WARN Act Claims and Unsecured Claims are Impaired under the Plan, and holders of such Claims may receive a distribution under the Plan. Therefore, such creditors are entitled to vote to accept or reject the Plan in accordance with section 1126(a) of the Bankruptcy Code. The Debtor is soliciting votes from these creditors, to the extent that such creditors' Claims have not been disallowed and are not subject to a pending objection. If the Claims are subject to a pending objection, the Solicitation Procedures Order provides for a procedure that creditors must follow for their votes to be counted.

Interests in the Debtor are also Impaired under the Plan. On the Effective Date, the Interests in the Debtor shall be cancelled, and holders of Interests shall receive and retain no value under the Plan. Holders of Interests are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, and accordingly, are not entitled to vote to accept or reject the Plan.

The deadline to vote on the Plan is **December 1, 2026 at 4:00 p.m. (Eastern Time)** (the "***Voting Deadline***"). To be counted as votes to accept or reject the Plan, all ballots must be properly executed, completed and delivered (either by using the return envelope provided, by first class mail, overnight delivery or personal delivery or via electronic, online transmission) so that they are **actually received** on or before the Voting Deadline by the Debtor at the following addresses:

If by first class mail, overnight courier, or hand delivery:

> Baker & Taylor, LLC Ballot Processing
> Attn: Omni Agent Solutions, Inc.
> 5955 De Soto Avenue, Ste. 100
> Woodland Hills, California 91367

If by electronic transmission:

> Omni will accept online transmission of Ballots through the E-Ballot Portal on Omni's website at https://omniagentsolutions.com/BakerTaylor-Ballots, but will

**not** accept Ballots submitted by other forms of electronic transmission or facsimile. Any Ballots so submitted will not be counted for purposes of voting on the Plan.

#### *5. Identity of Person to Contact for More Information Regarding the Plan.*

Any interested party desiring further information about the Plan may contact Paul Winterhalter via telephone at (267) 338-1370 or via email at pwinterhalter@offitkurman.com.

## II. BACKGROUND OF THE DEBTOR AND THE CHAPTER 11 CASE[7]

### A. Description and History of the Debtor's Business.

Baker & Taylor was founded in 1828 in Hartford, Connecticut. In the decades prior to the Bankruptcy Case, Baker & Taylor grew into a leading distributor of English language books, media, software and services, primarily to public and academic libraries in the United States. At its height, Baker & Taylor was the principal supplier of books and media to most of the public libraries in the United States, and also acted as supplier for academic libraries, independent bookstores and other customers throughout the country.

From the 1990s on, Baker & Taylor faced perennial challenges to its operations in a changing business environment. Structural hurdles to profitability, including declining book sales, decreasing margins, inroads by online businesses into distribution services, and struggles to modernize operations, caused repeated liquidity crises and led to repeated transfers of ownership and management. From 2016 to 2021, Baker & Taylor was owned by Follett Corporation ("***Follett***"), a leading U.S. provider of educational materials and services. Follett, beset by its own difficulties, struggled to maintain Baker & Taylor's profitability, however, and it sought to divest from Baker & Taylor in 2021.

On November 4, 2021, Follett sold Baker & Taylor to a group of Baker & Taylor officers and directors, led by Amandeep S. Kochar, who sought to address the company's liquidity problems and restructure its business operations to regain profitability. The sale, however, did not materially improve Baker & Taylor's fortunes. Immediately following the acquisition, Baker & Taylor suffered major operating setbacks, including the resurgence of COVID-19 virus in 2021 and 2022 and two major 2022 cyberattacks, which put further pressure on the company's operations. To respond to these challenges, in 2023 Baker & Taylor began implementing a plan to return to profitability by (i) raising capital in sale-leaseback transactions and divestitures of overseas business divisions, and (ii) offshoring and automating many of its business operations. While these efforts produced significant funds to aid in its operations, by 2025, to restructure did not bear fruit and the company fell into default under its secured credit facility with CIT Northbridge Funding I, LLC ("***CIT***").

[7] The discussion below summarizes key aspects of the Debtor's background and the events which led to the Bankruptcy Case. Further details regarding the Debtor and its background are available in the *Declaration of Amandeep Kochar in Support of the Chapter 11 Petition and First Day Motions* [Docket No. 9] (the "***Kochar Declaration***"), filed in the Bankruptcy Case. The Kochar Declaration is available here.

**B. Events Leading to the Chapter 11 Filing.**

By mid-2025, it was apparent that without new capital, the deterioration of the relationships with CIT, and the company's inability to purchase sufficient inventory to grow through the crisis, Baker & Taylor faced insurmountable challenges to continuing its business operations. In July 2025, Baker & Taylor therefore began efforts to raise the significant new capital necessary to continue operations or to sell the business to a buyer with resources to complete a turnaround of its operations. The company retained Riveron Management Services, LLC ("***Riveron***") as a financial advisor to assist with strategies to raise capital or market the business for sale, and together with Riveron, engaged with multiple potential sale and refinancing counterparties.

In September 2025, these efforts led to an agreement to sell Baker & Taylor's assets to Readerlink, LLC ("***Readerlink***"), a major book distributor in the United States. Baker & Taylor signed a letter of intent with Readerlink and CIT on September 6, 2025 for sale of assets through a private sale under Article 9 of the Uniform Commercial Code. The contemplated transaction would have allowed essentially all of Baker & Taylor's operations to continue under Readerlink's ownership and for most Baker & Taylor employees to retain their positions with the new company, but required extensive negotiation of arrangements with Baker & Taylor's vendors, customers and contract counterparties. Despite intensive efforts to complete these negotiations in a way which would allow Readerlink to consummate the transaction, Readerlink determined that it could not consummate the transaction and withdrew its purchase offer on September 26, 2025.

The failure of the Readerlink transaction left Baker & Taylor without credit to fund its operations and no prospect of new capital or a purchaser for its assets.[8] Recognizing that it had no realistic choice but to wind down its operations and close its doors, the company took immediate steps to effectuate the winddown. Because CIT would not exercise discretion to continue funding Baker & Taylor's full workforce in a wind down budget, Baker & Taylor separated approximately 600 of its 950 employees from employment on October 6, 2025, and it provided notice to its remaining employees that their employment would end at scheduled times thereafter. The company also began urgent efforts to divest discrete parts of its and its affiliates' assets and operations, to collect on major accounts receivable, and to liquidate its inventory of books and media.

Through the final months of 2025, Baker & Taylor successfully divested three business divisions, (i) Baker & Taylor Publisher Services, a publishing services and digital and physical book production business principally housed in Bookmasters, Inc., a Baker & Taylor affiliate; (ii) Baker & Taylor's digital publishing business, which provided access to e-books and e-audio books to public library customers; and (iii) CamCat Publishing, a division providing publishing services to individual authors, principally of children's books and media, generating an aggregate of over $2.1 million in proceeds. Baker & Taylor also employed a liquidator, Great American

[8] In October 2025, Baker & Taylor entertained a second offer from a potential strategic purchaser who indicated interest in purchasing substantially all remaining Baker & Taylor assets. Despite executing a non-binding letter of intent on October 21, 2025, the potential purchaser determined that it was not interested in pursuing the transaction and terminated the letter of intent on November 3, 2025.

Holdings, LLC ("***GA Group***") to liquidate its inventory of books and media, and together with GA Group, liquidated in excess of $8.7 million in inventory.

As a result of these efforts and collection of accounts due to Baker & Taylor, on February 13, 2026, Baker & Taylor retired the full balance of the CIT Credit Facility, which had stood in excess of $30 million in August 2025.

While Baker & Taylor carried out its winddown efforts successfully, its efforts were increasingly plagued by costs relating to litigation against the company. Since March 2025, the company has faced litigation in the United States District Court for the Southern District of Ohio by OCLC, Inc. ("***OCLC***"), a nonprofit library cooperative based in Dublin, Ohio, relating to allegations that Baker & Taylor used certain data of "WorldCAT," a library information platform operated by OCLC, to develop a competing platform, BTCat. Baker & Taylor vigorously defended against the OCLC allegations, but the litigation continued to impose substantial costs on the company through late 2025 and early 2026. *See OCLC, Inc. v. Baker & Taylor, LLC and Bridgeall Libraries, Ltd.*, Case No. 2:25-cv-309 (S.D. Ohio March 26, 2025) (the "***OCLC Litigation***").

Other litigation also plagued the winddown efforts. Most significantly, in Illinois and Georgia, former Baker & Taylor employees filed litigation October 15, 2025 asserting claims on behalf of putative classes of claimants under the federal Worker Adjustment and Retraining Notification Act, codified at 29 U.S.C. §§ 2101–2109, arising from their October 6, 2025 termination from employment (the "***Federal WARN Act Litigation***").[9] Separately, on February 18, 2026, two former employees filed an Individual and Class Action Complaint against Baker & Taylor, BTAC Holding Corp. ("***BTAC***"), and Amandeep Kochar in the Superior Court of New Jersey for Somerset County, initiating the case entitled *Carmichael, et al. v. Baker & Taylor, et al.*, Civil Action No. SOML 00023226, alleging that certain New Jersey employees were denied severance benefits in connection with their termination, in violation of the New Jersey Millville Dallas Airmotive Plant Job Loss Notification Act, N.J.S.A. 34:21-1 *et seq.* (the "***New Jersey WARN Act Litigation***," and together with the Federal WARN Act Litigation, the "***WARN Act Litigation***"). Though no class was certified in any of the WARN Act Litigation prior to the Petition Date, Baker & Taylor faced the prospect of spiraling litigation costs from the WARN Act Litigation and the OCLC Litigation, and declining collections of assets from its continuing winddown efforts.

### C. Significant Events During the Bankruptcy Case.

The Debtor filed its chapter 11 petition on March 16, 2026 in an effort to stay the litigation matters described above and to complete an orderly liquidation of its remaining assets.

#### *1. First Day Motions.*

On the Petition Date, the Debtor filed certain motions with the Bankruptcy Court designed to prevent interruptions in its winddown efforts. Specifically, the Debtor sought and obtained orders authorizing it, on an interim basis, to pay certain pre-petition payroll to its remaining

---

[9] *See Martin and Camacho-Perez v. Baker & Taylor, LLC*, Case No 1:25-cv-12430 (N.D. Ill. Oct 15, 2025) and *Edwards v. Baker & Taylor, LLC*, Case No. 2:25-cv-00317-RWS (N.D. Ga. Oct 15, 2025).

employees [Docket No. 4], to redact certain employee information from documents filed in the Bankruptcy Case [Docket No. 5], and to continue to access its prepetition bank accounts [Docket No. 6]. The Bankruptcy Court later entered final orders granting the relief sought in these motions.

### *2. Retention of Professionals.*

During the Bankruptcy Case, the Debtor obtained Bankruptcy Court approval to retain the following Professionals to assist it in carrying out its duties as debtor in possession and to represent its interests: (i) Offit Kurman, P.A. as counsel for the Debtor effective as of the Petition Date [Docket No. 54]; (ii) Riveron as the Debtor's financial advisor, effective as of the Petition Date [Docket No. 55]; and (iii) Omni as the Debtor's Claims and noticing agent, effective as of the Petition Date [Docket No. 33].

### *3. Appointment of the Official Committee of Unsecured Creditors and Commencement of Committee Investigation.*

On April 1, 2026, the United States Trustee for the District of New Jersey (the "***U.S. Trustee***") appointed the Official Committee of Unsecured Creditors (the "***Committee***") [Docket No. 55]. On May 20, 2026, the Bankruptcy Court approved the retention of Lowenstein Sandler, LLP as counsel to the Committee effective as of April 14, 2026 [Docket No. 101].

The Committee has since commenced an independent investigation into potential claims and Causes of Action that the Debtor may have against certain of the Debtor's Insiders and Affiliates, serving initial document requests on the Debtor on April 26, 2026. The Debtor has been working constructively with the Committee since receiving requests, including by producing responsive documents on an ongoing basis. On August 20, 2026, the Bankruptcy Court entered the *Protective Order Regarding Production of Documents* [Docket No. 152] to facilitate the continued production of documents responsive to the Committee's requests. Because the Committee's investigation is ongoing and certain document requests remain outstanding, the Committee is presently unable to confirm the conclusions reached as part of its independent investigation. As discussed in further detail below, the Plan Administrator will continue the Committee's independent investigation on and after the Effective Date and will be vested with all of the Debtor's privileges and immunities and access to the Debtor's books, records, and communications.

### *4. Adversary Proceedings by WARN Act Plaintiffs.*

On March 23, 2026, Kelly Edwards, a former employee of the Debtor who had initiated the prepetition Federal WARN Act Litigation in the United States District Court for the Northern District of Georgia, filed an adversary proceeding entitled *Edwards v. Baker & Taylor, LLC*, Adv. Pro. No. 26-01148, asserting Federal WARN Act Claims against the Debtor individually and on behalf of a putative class of plaintiffs in multiple states (the "***Federal WARN Act Adversary Proceeding***"). On October 6, 2026, the Debtor filed a motion to dismiss the Federal WARN Act Adversary Proceeding [Adv. Pro. Docket No. 15]. The Federal WARN Act Plaintiffs oppose the relief requested in the motion to dismiss.

On April 29, 2026, Sariena Carmichael and Kristie Amen, named plaintiffs in the New Jersey WARN Act Litigation, filed an adversary proceeding entitled *Carmichael, et al. v. Baker*

*& Taylor, LLC*, Adv. Pro. No. 26-01197), individually and on behalf of a putative class of New Jersey Employees asserting claims under the New Jersey WARN Act against the Debtor, BTAC, and Amandeep Kochar (the "***New Jersey WARN Act Adversary Proceeding***"). On October 21, 2026, the Debtor, together with BTAC and Amandeep Kochar, filed a joint motion to approve a settlement with the New Jersey WARN Act Plaintiffs under Bankruptcy Rule 9019 [Adv. Pro. Docket No. 17]. The Court has yet to approve the proposed settlement.

The Debtor believes that it has substantial grounds to dispute liability in both the Federal WARN Act Adversary Proceeding and the New Jersey WARN Act Adversary Proceeding. In the Federal WARN Act Adversary Proceeding, the Debtor believes that it qualifies for two exceptions to the Federal WARN Act's obligation to provide employees with 60 days paid notice prior to a "mass layoff"—namely, the "faltering company" and the "unforeseen business circumstances" exceptions. *See* 29 U.S.C. § 2102(b)(1) and (2). With respect to the New Jersey WARN Act Adversary Proceeding, the Debtor believes that its termination of 44 employees at its New Jersey location in January 2026 did not implicate the New Jersey WARN Act, which only applies to mass layoffs of 50 or more employees. *See* N.J. Stat. § 34:21-1.

### *5. Rejection of Leases of Real Property by the Debtor.*

On May 26, 2026, the Bankruptcy Court entered an *Order Authorizing Rejection of Certain Unexpired Leases of Non-Residential Real Property* [Docket No. 108] (the "***Lease Rejection Order***"), granting a motion by the Debtor for approval of the rejection of real property leases of prepetition business locations in Charlotte, North Carolina, Commerce, Georgia, Momence, Illinois, and Bridgewater, New Jersey. The Lease Rejection Order approved the rejection of the leases effective as of the Petition Date other than the lease in Momence, Illinois. With respect to the Momence, Illinois lease, the Bankruptcy Court authorized rejection effective as of March 31, 2026—the date that the Debtor filed the motion to reject the leases.

### *6. Schedules and Statements and Bar Date Order.*

On April 20, 2026, the Debtor filed its Schedules A/B through H [Docket No. 65] and its Statement of Financial Affairs [Docket No. 66] in the Bankruptcy Case. On the same date, the Debtor amended its list of creditors and parties in interest to add certain previously unscheduled parties, and provided notice of the Bankruptcy Case to such additional parties.

On June 13, 2026, the Bankruptcy Court entered an *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(B)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form, Manner and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof and (V) Granting Related Relief* [Docket No. 118] (the "***Bar Date Order***"). The Bar Date Order established July 17, 2026 at 5:00 p.m. (prevailing Eastern Time) as the General Claims Bar Date for submission of proofs of claim in the Bankruptcy Case, and September 14, 2026 at 5:00 p.m. (prevailing Eastern Time) as the deadline for submission of proofs of Claim by Governmental Units as defined in section 101(27) of the Bankruptcy Code. On June 19, 2026, Omni filed a certificate of service showing service of a Bar Date Notice on creditors and parties in interest in the Bankruptcy Case.

## D. The Debtor's Assets.

### *1. Available Assets.*

The Debtor's principal assets consist of Cash in its bank accounts, accounts receivable, and certain funds to which the Debtor may be entitled under various prepetition contracts with third parties. The following summary lists the Debtor's best estimate of the value of such assets as of the date of this Disclosure Statement:

a. Cash On Hand. At the time of the filing of this Disclosure Statement, the Debtor held approximately $290,000 in available Cash in its bank accounts.

b. Accounts Receivable. At the time of the filing of this Disclosure Statement, the Debtor holds accounts receivable of approximately $605,000.

c. CIGNA ASO Account. Prior to the Petition Date, Cigna Health and Life Insurance Company ("***Cigna***") and the Debtor were parties to an Administrative Services Only Agreement (the "***ASO Agreement***"), pursuant to which Cigna provided administrative services for the Debtor's self-insured employee healthcare benefits plan (the "***Benefits Plan***"). Under the ASO Agreement, Cigna processed healthcare claims of Debtors' employees and their dependents (the "***Benefits Claims***"), and caused the Benefits Claims that were eligible for payment under the Benefits Plan to be funded through the Debtor's segregated Plan bank account at JP Morgan Chase, Account No. XXXXX7847 (the "***Cigna ASO Account***"). The ASO Agreement was validly terminated by the Debtor as of October 6, 2025. The Debtor holds approximately $323,000 in Cash in the Cigna ASO Account.

d. Workers Compensation Collateral Account. The Debtor holds approximately $400,000 in a prepetition collateral account held by Strategic Comp., a division of Great American Insurance Group, which administers the Debtor's workers' compensation insurance policy.

e. Inventory. The Debtor holds a small amount of inventory remaining from its former operations. The liquidation value of this inventory is approximately $60,000, but substantially all of the inventory is subject to claims of suppliers and asset purchasers, who claim ownership interests in parts of the inventory. The Debtor therefore believes that the likely value of the inventory to the estate, net of such claims, is less than $5,000.

f. Receivable from Hong Kong Public Libraries ("***HKPL***"). The Debtor believes that it is entitled to receipt of approximately $90,000 for goods delivered to HKPL during 2025 and 2026. HKPL terminated its agreement with the Debtor shortly before the Petition Date and has since asserted unspecified rights of setoff against the obligation. Collection of the HKPL obligation is doubtful given the complexity of seeking collection from an entity affiliated with an overseas governmental entity. The Debtor estimates that it has a low likelihood of collecting any funds from HKPL.

### *2. Additional Potential Assets.*

a. James Bennett Earnout. The Debtor holds potential "earn out" rights arising from a prepetition sale of its equity interests in James Bennett Pty, Ltd. ("***James Bennett***") to Booktopia Holdings Pty Ltd. ("***Booktopia***") on May 15, 2025. Such rights entitle the Debtor to receive $1.25 million from James Bennett in the event that James Bennett reaches certain revenue thresholds within 18 months following the consummation of the Booktopia sale. While the Debtor is unable to determine with certainty at this time whether James Bennett will reach the required EBITDA threshold, it appears possible that the Debtor will be entitled to the earnout payment based on review of James Bennett's current financial data.

b. Lease Deposits. The Debtor holds rights to return of deposits regarding its rejected real property leases in Commerce, Georgia and Momence Illinois. The lease deposits total approximately $3.0 million, but may be subject to offset for lease rejection damage Claims under section 502(b)(6) of the Bankruptcy Code, which Claims may exceed the amount of the deposits. The Debtor estimates that it likely will be entitled to return of approximately $240,000 of the lease deposits.

c. Valsoft Receivable. The Debtor holds rights relating to its indirect equity holdings in BTAC Scotland, Ltd. ("***BTAC Scotland***"), an indirect subsidiary in the United Kingdom. BTAC Scotland sold its assets to Valsoft Ireland Limited and Valsoft Scotland Limited (together, "***Valsoft***") under a June 17, 2025 asset purchase agreement, and BTAC Scotland is entitled to a deferred purchase price amount of $500,000 arising from the transaction. The Debtor estimates, however, that the liabilities of BTAC Scotland will exceed its available assets, and that no value from the Valsoft transaction is likely to flow to the Debtor.

d. Financial Analyst Escrow. The Debtor is entitled to a refund of unused retainer amounts held by its Financial Analyst, Riveron RTS, estimated to be $95,000 on the Effective Date.

## III. SUMMARY OF THE PLAN OF LIQUIDATION

**THE FOLLOWING IS A SUMMARY OF SOME OF THE SIGNIFICANT ELEMENTS OF THE PLAN. THIS DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE MORE DETAILED INFORMATION SET FORTH IN THE PLAN. CREDITORS ARE THEREFORE URGED TO READ THE PLAN IN ITS ENTIRETY.**

### A. What Creditors and Interest Holders Will Receive Under the Proposed Plan.

The Plan classifies Claims and Interests in various Classes. The Plan states whether each class of Claims or interests is Impaired or Unimpaired. The Plan provides the treatment that each class will receive.

### *1. Unclassified Claims.*

In accordance with section 1123(a)(1) of the Bankruptcy Code, certain Claims are not classified and do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. The Plan provides that Administrative Claims, Priority Tax Claims, and U.S. Trustee Fees are not classified for purposes of voting or receiving distributions. Rather, the Plan treats all such Claims separately as unclassified Claims as set forth in this Article II, and the holders thereof are not entitled to vote on the Plan.

#### a. Administrative Claims.

The Plan provides that each holder of an Administrative Claim, other than (i) an Administrative Claim for Professional fees and expenses covered by Section 2.02 of the Plan, (ii) an Administrative Claim of a governmental unit under section 503(b)(1)(D) of the Bankruptcy Code, (iii) timely filed and Allowed Claims arising under section 503(b)(9) of the Bankruptcy Code, or (iv) an Administrative Claim that has been Allowed as such on or before the Administrative Claims Bar Date, must file and serve on the Plan Administrator a request for payment of such Administrative Claim so that it is received no later than **November 17, 2026 at 4:00 p.m. (Eastern Time)** (the "***Administrative Claims Bar Date***") pursuant to the procedures specified in the Solicitation Procedures Order. The Plan further provides that holders required to file and serve, who fail to file and serve, a request for payment of Administrative Claims by the Administrative Claims Bar Date will be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor and its property, and such Administrative Claims will be deemed discharged as of the Effective Date. The Plan provides that, as of the Effective Date, all such Claims will be subject to the permanent injunction set forth in Section 10.06 of the Plan. Nothing in the Plan alters, extends, or modifies the bar date for filing Claims arising under section 503(b)(9) of the Bankruptcy Code, as established pursuant to the Bar Date Order.

The Plan provides that each Administrative Claim, with respect to which a request for payment has been properly and timely filed pursuant to Section 2.01(a) of the Plan, will become an Allowed Administrative Claim if no objection to such request is filed with the Bankruptcy Court and served on the Plan Administrator and the requesting party on or before the Claims Objection Deadline, as the same may be modified or extended by order of the Bankruptcy Court. If an objection is timely filed to any Administrative Claim, the Plan provides that it will become an Allowed Administrative Claim only to the extent Allowed by Final Order or as such Claim is settled, compromised, or otherwise resolved pursuant to Article VII of the Plan.

The Plan provides that holders of Allowed Administrative Claims which have not already been paid or satisfied during the Bankruptcy Case shall receive Cash equal to the unpaid amount of such Allowed Administrative Claim on the latest of: (i) the Effective Date, or (ii) 30 days after the date on which such Administrative Claim becomes Allowed; *provided however*, that to the extent that the available assets are insufficient to pay all Allowed Administrative Claims unpaid as of the Effective Date in full, such Claims shall be paid pro rata in accordance with their priority under the Bankruptcy Code.

**b. Professional Fees.**

Each Professional asserting an Administrative Claim for compensation for services rendered and expenses incurred in connection with the Bankruptcy Case before the Effective Date shall: (i) file with the Bankruptcy Court, and serve on the Plan Administrator an application for allowance of such Administrative Claim on or before the 45th calendar day following the Effective Date, and (ii) after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and Bankruptcy Rules and any prior orders of the Bankruptcy Court in this Bankruptcy Case, be paid in full, in Cash, in such amounts as are Allowed by a Final Order.

On the Effective Date, the engagement of each Professional retained by the Debtor shall be terminated without further order of the Bankruptcy Court or act of the parties; *provided, however*, that such Professionals shall be entitled to prosecute their respective Claims for professional fees and the Plan Administrator shall be responsible for paying the fees, costs, and expenses associated with the prosecution of such Claims.

From and after the Effective Date, the Plan Administrator shall, upon receipt of appropriate documentation and in the ordinary course of business, pay the post-Effective Date charges incurred by the Liquidating Debtor or the Plan Administrator, or the Committee and its Professionals for any Professional's fees, disbursements, expenses, or related support services without application to or approval from the Bankruptcy Court.

**c. Priority Tax Claims.**

The Plan provides that, except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, each holder of an Allowed Priority Tax Claim will receive, in full and final satisfaction, settlement, release, and discharge of such Claim, Cash equal to the unpaid amount of such Allowed Priority Tax Claim on the latest of (a) the Effective Date; (b) 30 days after the date on which such Priority Tax Claim becomes Allowed; or (c) the date on which such Priority Tax Claim becomes due and payable by its terms.

**d. U.S. Trustee Fees.**

The Plan provides that, on the Effective Date, the Debtor will pay all U.S. Trustee Fees that are due and owing as of the Effective Date. The Plan further clarifies that nothing in the Plan will release the Debtor from its obligation to pay, or the Plan Administrator from paying, as applicable, all U.S. Trustee Fees arising from and after the Effective Date before a Final Order is entered by the Bankruptcy Court closing the Bankruptcy Case.

***2. Classification of Claims and Interests.***

**a. Classification in General.**

Pursuant to sections 1122 and 1123 of the Bankruptcy Code, a Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution; provided, however, that a Claim is placed in a particular Class for the purpose of receiving distributions only to the extent that such Claim is Allowed. Voting rights of Claims will be determined by a separate order of the Bankruptcy Court approving solicitation and voting procedures in relation to the Plan.

**b. Classification of Claims and Interests.**

The following table designates the Classes of Claims against and Interests in the Debtor and specifies which Classes are: (a) Impaired and Unimpaired; (b) entitled to vote to accept or reject the Plan; and (c) deemed to accept or reject the Plan:

| Class # | Description | Impairment | Entitled To Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | WARN Act Claims | Impaired | Yes |
| 3 | Unsecured Claims | Impaired | Yes |
| 4 | Interests | Impaired | No |

**c. Elimination of Vacant Classes.**

Any Class that does not have at least one holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed as of the date of the Confirmation Hearing for the Debtor shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan pursuant to section 1129(a)(8) of the Bankruptcy Code.

**d. Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.**

Because certain Classes are deemed to have rejected the Plan, the Debtor seeks confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to such Classes and any other Impaired Classes that vote to reject the Plan. Subject to Articles 12.03 and 12.04 of the Plan, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw the Plan in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code.

***3. Treatment of Claims and Interests.***

The treatment and voting status of, and expected recovery for, Claims and Interests under the Plan is summarized above in Section I.B ("The Chapter 11 Plan of Liquidation"). The Plan specifically provides as follows with respect to treatment and voting status of Claims and Interests:

**a. Class 1 – Priority Non-Tax Claims.**

Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment, each holder of an Allowed Priority Non-Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of such Claim, a pro rata share of distributions of Cash from available assets, after payment in full of all Allowed Administrative Claims and Priority Tax Claims. **Class 1 is Impaired, and holders of Claims in Class 1 are entitled to vote to accept or reject the Plan.**

**b. Class 2 – WARN Act Claims.**

To the extent that any WARN Act Claim is Allowed and entitled to a distribution, any portion of such Claim entitled to priority treatment under section 507(a)(4) of the Bankruptcy Code shall receive the same treatment afforded to Allowed Priority Non-Tax Claims under Class 1 above, and any remaining portion of such Claim not entitled to such priority shall receive the same treatment afforded to Allowed Unsecured Claims under Class 3 below. Nothing in the Plan or the Confirmation Order shall constitute an allowance, disallowance, estimation, or determination of the amount or priority of any WARN Act Claim, and all WARN Act Claims shall be Allowed or disallowed only by Final Order of the Bankruptcy Court or pursuant to a settlement approved by the Bankruptcy Court. All rights, claims, and defenses of the Debtor, the Committee, the Plan Administrator, and the holders of WARN Act Claims with respect to the WARN Act Claims are fully preserved. **Class 2 is Impaired, and holders of Claims in Class 2 are entitled to vote to accept or reject the Plan.**

**c. Class 3 – Unsecured Claims.**

Except to the extent that a holder of an Allowed Unsecured Claim agrees to a less favorable treatment, each holder of an Allowed Unsecured Claim shall receive, in full and final satisfaction, settlement, release, and discharge of such Claim, a pro rata share (in proportion to each holder's Allowed Claim to the aggregate amount of Allowed Claims in Class 3) of Cash from available assets, after payment in full of Administrative Claims, Priority Tax Claims and Class 1 Priority Non-Tax Claims. **Class 3 is Impaired, and holders of Claims in Class 3 are entitled to vote to accept or reject the Plan.**

**d. Class 4 – Interests.**

On the Effective Date, all Interests in the Debtor shall be cancelled, and the holders of Interests shall receive and retain no value under the Plan. **Class 4 is Impaired, and holders of Interests in Class 4 are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, and accordingly, are not entitled to vote to accept or reject the Plan.**

**B. Means for Implementation of the Plan.**

***1. Revesting of Assets/Payments to Holders of Allowed Claims.***

The Plan provides that, on the Effective Date, all assets of the Debtor will revest in the Liquidating Debtor for distributions to holders of Allowed Claims pursuant to the terms of Articles III and IV of the Plan. The Liquidating Debtor will exist solely for the purposes of winding down its business affairs, liquidating its remaining assets, resolving disputes necessary to carry out the purposes of the Plan, and making distributions to holders of Allowed Claims. The Liquidating Debtor shall not engage in any new business operations.

### *2. The Plan Administrator and Oversight Committee.*

#### a. Plan Administrator.

The Plan provides that, beginning on the Effective Date, the Plan Administrator, designated by the Committee after consultation with the Debtor, and with the reasonable consent of the Debtor, shall assume the management of the Liquidating Debtor. Subject to the terms of the Plan, the Plan Administrator shall reconcile Claims, administer the Plan in an efficacious manner, and assist with other administrative duties and reporting obligations associated with the Plan following the Effective Date. The Plan Administrator will have the authority and standing, on behalf of the Liquidating Debtor, to pursue any claims or causes of action the Debtor has as debtor-in-possession, including claims arising under Chapter 5 of the Bankruptcy Code. The Oversight Committee may seek removal of the Plan Administrator for cause upon application to the Bankruptcy Court and shall have the right to designate a successor Plan Administrator with the reasonable consent of the Debtor.

The Plan Administrator shall be compensated pursuant to the terms of an engagement agreement to be approved by the Committee, which agreement shall be filed with the Bankruptcy Court on or before the Confirmation Date. The Plan Administrator's fees and expenses shall be paid from the assets of the Liquidating Debtor as an administrative expense of the wind-down without further order of the Bankruptcy Court, subject to the quarterly disclosure in the reports required under Section 5.01 of the Plan.

The Plan Administrator shall be indemnified and held harmless by the Liquidating Debtor for any claims, causes of action, or liabilities arising from the Plan Administrator's good faith performance of duties under the Plan, except for claims arising from the Plan Administrator's actual fraud, willful misconduct, or gross negligence as determined by a Final Order.

#### b. Powers of the Plan Administrator.

Without further notice to or order of the Bankruptcy Court, and subject to the terms of this Plan and the rights of the Oversight Committee, the Plan Administrator shall be authorized and empowered, on behalf of the Liquidating Debtor, to: (a) make distributions to holders of Allowed Claims as provided in the Plan; (b) establish, maintain, and adjust such reserves as the Plan Administrator determines are necessary or appropriate to administer the Plan, including reserves for Administrative Claims, Priority Tax Claims, and Professional fees; (c) object to, reconcile, compromise, settle, or otherwise resolve Claims in accordance with the Plan; (d) commence, prosecute, settle, abandon, or otherwise resolve Causes of Action in accordance with Section 7.02; (e) retain and compensate the Plan Administrator's attorneys, accountants, and other Professionals without further order of the Bankruptcy Court; (f) prepare and file tax returns and pay taxes on behalf of the Liquidating Debtor; (g) exercise all rights, powers, and privileges previously held by the Debtor, including the authority to assert or waive any attorney-client privilege or work-product protection; (h) dissolve the Liquidating Debtor and take all actions necessary to wind down its affairs; and (i) take any other actions not inconsistent with the Plan that the Plan Administrator deems necessary or desirable to implement the Plan and complete the wind-down of the Liquidating Debtor.

**c. Plan Administrator Reserve.**

Upon the occurrence of the Effective Date, the Debtor shall fund no less than $[●] into the Plan Administrator Reserve. At such time as the Plan Administrator determines that the estate is fully administered, any funds then remaining in the Plan Administrator Reserve shall become assets of the Liquidating Debtor available for distribution in accordance with the terms of the Plan.

**d. The Oversight Committee.**

On the Effective Date, the Oversight Committee shall be formed to oversee the Plan Administrator's administration of the Plan in place of the continued existence of the Committee. The Oversight Committee shall be comprised of at least three (3) members designated by the Committee and reasonably acceptable to the Debtor, whose identities shall be disclosed on or before the Confirmation Date. The Oversight Committee shall have standing to be heard on any matter relating to the administration of the Plan, including objections to Claims, prosecution of Causes of Action, distributions to Classes of creditors, and the appointment, removal, and replacement of the Plan Administrator. The Plan Administrator shall consult with, and where required by the Plan, seek the reasonable consent of, the Oversight Committee with respect to material decisions concerning the administration of the Plan and wind-down of the Liquidating Debtor.

Members of the Oversight Committee shall receive no compensation on account of their service but shall be entitled to reimbursement of their reasonable out-of-pocket expenses from the assets of the Liquidating Debtor. The Oversight Committee shall be automatically dissolved upon the earlier of (i) the entry of a final decree closing the Bankruptcy Case and (ii) an order of the Bankruptcy Court dissolving the Oversight Committee.

**e. Implementation.**

The Plan will be effectuated through (i) the use of the Debtor's Cash on hand to pay, in Cash, all Allowed Claims to the extent that such Cash payment is required on the Effective Date pursuant to the terms of Articles III and IV of the Plan; (ii) the revesting of the remaining assets of the Debtor in the Liquidating Debtor for liquidation and collection by the Plan Administrator; (iii) the recovery of any additional assets and liquidation of any causes of action and distribution of Cash proceeds from such liquidation following the Effective Date; (iv) the assumption by the Debtor, and assignment to the Liquidating Debtor, of executory contracts and unexpired leases listed on the Schedule of Assumed Contracts, except for any executory contract or unexpired lease that: (a) previously has been assumed or rejected pursuant to a final order of the Bankruptcy Court, or (b) is subject to a separate motion to assume and assign or to reject under section 365 of the Bankruptcy Code filed before the Effective Date; and (v) the execution of such documentation as may be necessary or appropriate to memorialize the transactions contemplated herein. After the Confirmation Date, the Plan Administrator shall instruct Cigna to transfer all funds in the Cigna ASO Account into the Debtor's operating account or such other account as the Plan Administrator shall designate, and shall reserve such funds as set forth in Article 2 of the Plan.

### f. Corporate Governance.

On the Effective Date, the Persons acting as authorized persons, directors and officers of the Debtor prior to the Effective Date shall have no further authority, duties, responsibilities, and obligations relating to or arising from (i) operating the Liquidating Debtor or (ii) this chapter 11 case, and shall be deemed to have resigned from all of their respective positions with the Debtor, and the Plan Administrator shall act as a responsible person to complete the wind-down of the Liquidating Debtor's affairs.

Notwithstanding any applicable non-bankruptcy law to the contrary, any corporate or related action to be taken by or required of the Debtor to effectuate the designation of the Plan Administrator by the Committee upon the reasonable consent of the Debtor, or to carry out any other provision of the Plan shall, as of the Effective Date, be deemed to have occurred and be effective as provided in the Plan, and such actions shall be authorized, approved, and, to the extent taken before the Effective Date, ratified in all respects without any requirement of further action by holders of Claims or Interests, authorized persons, directors, or officers of the Debtor, the Liquidating Debtor, or any other Person. On or before the Effective Date, the appropriate authorized Persons, directors or officers of the Debtor shall be authorized and directed to issue, execute, and deliver the agreements, securities, instruments, or other documents contemplated by the Plan, or necessary or desirable to effectuate any transactions contemplated by the Plan, in the name of and on behalf of the Debtor.

### g. Compromise of Controversies.

In consideration for the classification, distributions, releases, and other benefits provided under the Plan, the provisions of the Plan upon the Effective Date shall constitute a good faith compromise and settlement of all Claims, Interests, and controversies relating to all Claims, Interests and controversies resolved pursuant to the Plan; provided, however, that nothing in Section 5.07 of the Plan shall (i) compromise, settle, release, or otherwise affect any Causes of Action preserved under Section 7.02 of the Plan, or (ii) compromise, settle, or determine the allowance, amount, or priority of any Disputed Claim, including any WARN Act Claim, which shall be resolved only in accordance with Article VII of the Plan. The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019.

### h. Effectuating Documents; Further Transactions.

Entry of the Confirmation Order shall establish conclusive corporate and other authority (and evidence of such corporate and other authority) required for the Debtor, the Liquidating Debtor and the Plan Administrator to undertake any and all acts and actions required to implement, or contemplated by, the Plan, and such acts and actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without the need for member vote and without any requirement of further action by the directors of the Debtor.

On and after the Effective Date, the Plan Administrator shall be authorized to (a) take any actions or effect transactions, including conversions, dissolutions, transfers, liquidations, or other corporate transactions, as may be determined by the Plan Administrator to be necessary or appropriate to implement the terms of the Plan without any further notice to or action, order or approval of the Bankruptcy Court, and (b) issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the Liquidating Debtor, without the need for any approvals, authorizations, or consents, except for those expressly required by the Plan.

Upon the completion of all distributions under the Plan, the resolution of all Disputed Claims, the prosecution or abandonment of all Causes of Action, and the filing of all required tax returns, the Plan Administrator shall (in its reasonable discretion after consultation with the Oversight Committee) file a motion seeking entry of a final decree closing the Bankruptcy Case and dissolving the Liquidating Debtor under applicable state law. Prior to dissolution, the Plan Administrator shall obtain all necessary and file all final federal, state, and local tax returns for the Liquidating Debtor.

**i. Access to Debtor's Books and Records After the Effective Date.**

On the Effective Date, the Debtor shall transfer, assign and convey to the Plan Administrator, and the Plan Administrator shall be authorized to take possession of, all of the Debtor's books and records. The Plan Administrator shall have the responsibility of storing and maintaining the books and records.

On the Effective Date, all of the Debtor's privileges and immunities, including any attorney-client privilege, work-product protection, or other privilege or immunity attaching to any documents or communications (whether written or oral), shall vest in and be transferred to the Plan Administrator on behalf of the Liquidating Debtor. The Plan Administrator shall hold and maintain such privileges and immunities and shall have the exclusive authority to assert or waive them in its sole discretion. For the avoidance of doubt, the transfer of privileges and immunities set forth herein (i) is limited to privileges and immunities held by the Debtor in its corporate capacity and shall not include any privilege or immunity held by any director, officer, or manager in his or her individual capacity, which shall remain with such individual; provided that any dispute as to whether a particular communication was made in an individual capacity or a corporate capacity shall be resolved by the Bankruptcy Court; and (ii) is intended to preserve, and shall not constitute a waiver of, any such privilege or immunity.

Notwithstanding any privilege or immunity transferred to the Plan Administrator pursuant to this Section 5.09, to the extent that representatives of the Debtor (including former officers, directors, employees, and Professionals) withhold or refuse to produce any document, communication, or information on the basis of attorney-client privilege, work-product protection, or any other privilege or immunity, such representatives shall provide the Plan Administrator with a privilege log identifying each withheld item with reasonable particularity, including: (i) the date of the document or communication; (ii) the author(s) and recipient(s); (iii) the general subject matter; and (iv) the specific privilege or protection asserted. Such privilege log must be provided within fourteen (14) days of the Effective Date. In the event of any dispute regarding the assertion

of privilege, the Plan Administrator may seek resolution from the Bankruptcy Court on an expedited basis.

### C. Distributions.

#### *1. Distributions, Generally.*

The Plan provides that the Plan Administrator shall make all Plan distributions to the appropriate holders of Allowed Claims in accordance with the terms of the Plan, using available Cash on the Effective Date and further Cash proceeds collected from liquidation of assets after the Effective Date.

The Plan also provides that the Debtor shall provide the Plan Administrator with all information in its possession regarding asserted Claims, the Allowed amount of such Claims entitled to receive a Plan distribution, and the identity and addresses of record holders of such Claims as set forth in the Debtor's books and records as of the Distribution Record Date.

#### *2. Allocation of Plan Distributions Between Principal and Interest.*

The aggregate consideration to be distributed to the holders of Allowed Claims under the Plan shall be treated as first satisfying an amount equal to the stated principal amount of the Allowed Claims of holders, as determined for federal income tax purposes, and any remaining consideration as satisfying accrued, but unpaid, interest, if any.

#### *3. No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in the Confirmation Order or other order of the Bankruptcy Court, or required by applicable bankruptcy or non-bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

#### *4. Date of Distributions.*

Unless otherwise provided in the Plan, (a) each holder of an Allowed Administrative Claim shall receive the distribution to which it is entitled under Article II of the Plan on the Effective Date or, if such Claim becomes Allowed after the Effective Date, as soon as reasonably practicable thereafter; (b) each holder of an Allowed Claim for Professional Fees shall be paid upon entry of a Final Order approving such Professional's final fee application; and (c) all other distributions of available Cash shall be made by the Plan Administrator in accordance with the Plan. The Plan Administrator shall make an initial distribution of available Cash on the Effective Date or as soon thereafter as is reasonably practicable, and thereafter shall make distributions of available Cash within thirty (30) days after the end of each calendar quarter, beginning with the first calendar quarter which ends at least ninety (90) days after the Effective Date.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### *5. Distribution Record Date.*

The Plan provides that, as of the close of business on the Distribution Record Date, the various lists of holders of Claims and Interests in each of the Classes, as maintained by the Debtor shall be deemed closed and there shall be no further changes in the record holders of any of the Claims and Interests. Neither the Debtor nor the Plan Administrator shall have any obligation to recognize any transfer of Claims or Interests occurring after the close of business on the Distribution Record Date. Additionally, with respect to payment of any cure costs or any cure disputes in connection with the assumption and/or assignment of the Debtor's executory contracts and leases, none of the Debtor, the Liquidating Debtor or the Plan Administrator shall have any obligation to recognize any party other than the non-Debtor party to the underlying executory contract or lease, even if such non-Debtor party has sold, assigned or otherwise transferred its Claim for a cure cost.

### *6. Delivery of Distributions.*

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be made to holders of record as of the Distribution Record Date by the Plan Administrator: (a) to the signatory set forth on the proof of claim filed by such holder or other representative identified therein (or at the last known addresses of such holder if no proof of claim is filed or if the Debtor has been notified in writing of a change of address); (b) at the addresses set forth in any written notices of address changes delivered to the Debtor (if before the Effective Date) or the Plan Administrator (if after the Effective Date) after the date of any related proof of claim; (c) at the addresses reflected in the Debtor's schedules if no proof of claim has been filed and the Plan Administrator has not received a written notice of a change of address; or (d) on any counsel that has appeared in this chapter 11 case on the holder's behalf. In the event that any distribution to any holder is returned as undeliverable, no distribution or payment to such holder shall be made unless and until the Plan Administrator has been notified of the then current address of such holder, at which time or as soon as reasonably practicable thereafter such distribution shall be made to such holder without interest; provided, however, such distributions or payments shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 90 days after such distribution, and no further payments shall be made to the holder of an Allowed Claim on account of such undeliverable distribution.

### *7. Manner of Payment Under Plan.*

Except as specifically provided in the Plan, at the option of the Plan Administrator, any Cash payment to be made under the Plan may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtor.

### *8. Unclaimed Property.*

Pursuant to the Plan, holders of Allowed Claims shall have 90 days from the date of any distribution to negotiate checks issued to such holders. To the extent such checks are not negotiated within such time period, the payment on such applicable checks shall be stopped and no further payments shall be made to the holder of an Allowed Claim on account of such unclaimed property. Any amounts attributable to unclaimed distributions shall be returned to the Liquidating Debtor's

distributable Cash and redistributed to holders of Allowed Claims in subsequent distributions in accordance with the Plan. The Plan Administrator shall have no obligation to attempt to locate any holder of an Allowed Claim other than by reviewing the Debtor's books and records, proofs of Claim filed against the Debtor or transfers of Claim filed pursuant to Bankruptcy Rule 3001.

***9. De Minimis Distributions.***

Notwithstanding any other provision of the Plan to the contrary, (i) no payment of fractions of cents will be made; and (ii) the Plan Administrator shall have no obligation to make a distribution that is less than $50.00 in Cash to any Claim holder. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

***10. Setoff and Recoupment.***

The Plan Administrator, may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off and/or recoup against any Allowed Claim, and the distributions to be made pursuant to the Plan on account of such Allowed Claim, any and all claims, rights and Causes of Action that the Debtor or its successors may hold against the holder of such Allowed Claim after the Effective Date; provided, however, that neither the failure to effect a setoff or recoupment nor the allowance of any Claim hereunder will constitute a waiver or release of any Causes of Action of the Debtor against such holder.

***11. Withholding and Reporting Requirements.***

In connection with the Plan and all distributions thereunder, the Plan Administrator shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Plan Administrator shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including requiring a holder of a Claim or Interest to submit appropriate tax and withholding certifications. Notwithstanding any other provision of the Plan: (i) each holder of an Allowed Claim that is to receive a distribution under the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations on account of such distribution; and (ii) no Plan distributions shall be required to be made to or on behalf of such holder pursuant to the Plan if, after 90 days from the date of transmission of a written request to the holder of an Allowed Claim, the Plan Administrator does not receive a valid, completed IRS form from such holder of an Allowed Claim.

***12. Claims Paid or Payable by Third Parties.***

**a. Claims Paid by Third Parties.**

The Plan Administrator, as applicable, shall be entitled to reduce in full a Claim, and such Claim shall be disallowed without an objection being filed, upon 30 days' notice to the creditor, to the extent that the holder of the Claim receives payment (before or after the Effective Date) on account of that Claim from a party that is not the Debtor. To the extent a holder of a Claim receives

a distribution on account of such Claim and receives payment from a party that is not the Debtor on account of such Claim, such holder shall, within 10 days of receipt thereof, repay or return the distribution to the Plan Administrator, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the Allowed amount of such Claim as of the date of any such distribution under the Plan. In the event such holder fails to timely repay or return such distribution, the Plan Administrator may pursue any rights and remedies against such holder under applicable law.

**b. Insurance Recovery.**

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.

**c. Applicability of Insurance Policies.**

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Pursuant to section 524(e) of the Bankruptcy Code, nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Person may hold against any other Person under any insurance policies, including against insurers, nor shall anything contained in the Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**D. Procedures for Resolving Claims.**

***1. Objections to Claims and Settlements; Treatment of Disputed Claims.***

Only the Plan Administrator shall be entitled to object to Claims after the Effective Date. In the event that the Debtor or the Committee filed an objection to, or motion to subordinate, a Claim before the Effective Date, that objection or motion shall automatically be assigned to the Plan Administrator on the Effective Date. Any objections to Claims must be served and filed on or before the Claims Objection Deadline. The Claims Objection Deadline may be extended by the Bankruptcy Court at any time upon motion filed and served pursuant to Bankruptcy Rule 2002 (as modified by the Confirmation Order) before the expiration of the then-current Claims Objection Deadline. Upon the filing of a motion to extend the Claims Objection Deadline, the Claims Objection Deadline will be automatically extended (without further order of the Bankruptcy Court) through and including the date on which the Court enters an order ruling upon such motion. Notwithstanding anything to the contrary herein, any Claims filed after the applicable bar date shall be deemed disallowed and expunged in their entirety automatically without further order of the Bankruptcy Court or any action being required on the part of the Debtor or Plan Administrator, unless the Person or Entity filing such untimely Claim has received Bankruptcy Court authority to do so before filing the Claim.

From and after the Effective Date, the Plan Administrator may settle or compromise any Disputed Claim without need for notice or approval of the Bankruptcy Court, the Oversight Committee, or any other party; provided, however, that nothing herein shall preclude or limit the right of the Plan Administrator to seek Bankruptcy Court approval of any such settlement or

compromise if (i) requested by the applicable counterparty to such settlement or compromise, or (ii) directed by the Oversight Committee.

Disputed Claims shall not be entitled to any Plan distributions unless and until such Claims become Allowed Claims.

Pending the resolution of any Disputed Claim, and the Allowance or disallowance of such Claim, the Plan Administrator shall reserve 100% of the amount of such Disputed Claim (or such lesser amount as may be estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code) from any further distributions to holders of Allowed Claims in Classes 1, 2, and 3.

### *2. Preservation of Causes of Action.*

The Plan provides that, except as otherwise provided in the Plan or in any Plan document, in accordance with sections 363(b) and 1123(b) of the Bankruptcy Code, the Liquidating Debtor shall retain and may enforce, sue on, settle, compromise, otherwise resolve, discontinue, abandon, or dismiss all Causes of Action that the Debtor or its estate may hold against any Person, including, without limitation, any Insider of Affiliate (other than Causes of Action released pursuant to Section 10.04 of the Plan) without the approval of the Bankruptcy Court; *provided*, however, that any settlement or compromise of a Cause of Action providing for a recovery to, or payment by, the Liquidating Debtor in an amount in excess of $[●] shall be made in consultation with the Oversight Committee. The Plan Administrator, in consultation with the Oversight Committee, may abandon or decline to pursue any Cause of Action in its discretion. Upon the Effective Date all of the Causes of Action shall vest in the Liquidating Debtor, and the Liquidating Debtor may pursue such Causes of Action in its sole and absolute discretion.

***No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against it as any indication that the Debtor or the Liquidating Debtor, by and through the Plan Administrator, will not, or may not, pursue any and all available Causes of Action against it. The Debtor and the Liquidating Debtor, by and through the Plan Administrator, expressly reserve all rights to prosecute any and all Causes of Action against any Person.*** Unless any Cause of Action against a Person is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, all Causes of Action are reserved for later adjudication by the Liquidating Debtor, by and through the Plan Administrator, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches shall apply to such Cause of Action upon, after, or as consequence of, confirmation or consummation of the Plan.

## E. Executory Contracts and Unexpired Leases.

### *1. General Treatment.*

Except as otherwise provided in the Plan, all executory contracts and unexpired leases of the Debtor shall be deemed to be rejected as of the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code, except for any executory contract or unexpired lease that: (i) previously has been assumed or rejected pursuant to a final order of the Bankruptcy Court; (ii) is

designated specifically or by category as a contract or lease to be assumed on the Schedule of Assumed Contracts and Leases; or (iii) is subject to a separate motion to assume and assign or to reject under section 365 of the Bankruptcy Code filed before the Effective Date; provided, however, that the Debtor shall have the right to amend the Schedule of Assumed Contracts to add or remove any executory contract or unexpired lease at any time prior to the Confirmation Date.

Subject to the occurrence of the Effective Date and Section 9.02 of the Plan, entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the rejection of executory contracts and unexpired leases as set forth in Section 8.01(a) and assumption of executory contracts and unexpired leases on the Schedule of Assumed Contracts and Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Each executory contract and unexpired lease assumed by the Debtor and assigned to the Liquidating Debtor pursuant to Section 8.01 of the Plan shall be assigned to and be fully enforceable by the Liquidating Debtor in accordance with its terms.

***2. Claims Based on Rejection of Executory Contracts or Unexpired Leases.***

In the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, such parties must file with the Bankruptcy Court and serve on the Plan Administrator not later than 30 days after the effective date of such rejection (which may be the Effective Date, or such date as may be established by order of the Bankruptcy Court), a proof of claim for damages alleged to arise from the rejection of the applicable contract or lease or be forever barred from filing a Claim, or sharing in distributions under the Plan, related to such alleged rejection damages.

***3. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.***

The cure of all defaults under executory contracts and unexpired leases to be assumed and assigned under the Plan and Confirmation Order including the resolution of all objections to the adequacy of assurance of future performance under such executory contracts and unexpired leases and as to the adequacy of amounts proposed to cure defaults under such executory contracts and unexpired leases, shall be governed by the terms and conditions of the Solicitation Procedures Order. All cure amounts will be satisfied by the Liquidating Debtor if not satisfied by the Debtor before the Effective Date.

Assumption of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults associated with such contract, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or bankruptcy related defaults, arising under any assumed executory contract or unexpired lease at any time before the effective date of the assumption. Any proof of Claim filed with respect to an executory contract or unexpired lease that has been assumed shall be deemed disallowed and expunged, without further notice to, action, order, or approval of the Bankruptcy Court.

#### *4. Reservation of Rights.*

Neither the exclusion nor inclusion of any contract or lease on the Schedule of Assumed Contracts and Leases, nor anything contained in the Plan, shall constitute an admission by the Debtor that any agreement, contract, or lease is an executory contract or unexpired lease subject to this Article VIII of the Plan, or that the Debtor or Liquidating Debtor have any liability thereunder.

#### *5. Postpetition Contracts and Leases.*

All contracts, agreements and leases that were entered into or assumed by the Debtor after the Petition Date shall be deemed assigned by the Debtor to the Liquidating Debtor on the Effective Date.

### F. Conditions Precedent to Consummation of the Plan.

#### *1. Conditions Precedent to Confirmation.*

The Plan provides that it shall be a condition to Confirmation of the Plan that the Confirmation Order shall have been entered by the Bankruptcy Court in form and substance acceptable to the Debtor and the Committee.

#### *2. Conditions Precedent to the Effective Date.*

Section 9.03 of the Plan provides that it shall be a condition to the occurrence of the Effective Date that the following provisions, terms and conditions shall have been satisfied or waived: (i) the Confirmation Order shall have become a Final Order; (ii) the Plan Documents shall have been executed and delivered, and any conditions (other than the occurrence of the Effective Date or certification by the Debtor that the Effective Date has occurred) contained therein having been satisfied or waived in accordance therewith; and (iii) all material governmental, regulatory and third party approvals, authorizations, certifications, rulings, no-action letters, opinions, waivers and/or consents in connection with the Plan, if any, shall have been obtained (unless failure to do so will not have a material adverse effect on the Debtor) and remain in full force and effect, and there shall exist no claim, action, suit, investigation, litigation or proceeding, pending or threatened in any court or before any arbitrator or governmental instrumentality, which would prohibit the consummation of the Plan.

#### *3. Waiver of Conditions Precedent; Bankruptcy Rule 3020(e) Automatic Stay.*

The Debtor or the Committee shall have the right to waive any condition precedent set forth in the Plan at any time, with the reasonable consent of the other, without leave of or notice to the Bankruptcy Court and without formal action other than proceeding with confirmation of the Plan. Further, the stay of the Confirmation Order, pursuant to Bankruptcy Rule 3020(e), shall be deemed waived by the Confirmation Order.

### *4. Effect of Failure of Conditions.*

If the substantial consummation of the Plan does not occur, the Plan and Confirmation Order shall be null and void in all respects, no distributions under the Plan shall be made, and nothing contained in the Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any claims by or Claims against or Interests in the Debtor; (b) prejudice in any manner the rights of the Debtor, any holders of Claims or Interests or any other Person; or (c) constitute an admission, acknowledgment, offer or undertaking by the Debtor, any holders or any other Person in any respect.

## G. Effect Of Confirmation.

### *1. Binding Effect of the Plan.*

The Plan provides that, upon the occurrence of the Effective Date and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062, the provisions of the Plan shall be immediately effective and enforceable and deemed binding upon any holder of a Claim against, or Interest in, the Debtor, and such holder's respective successors and assigns (whether or not the Claim or Interest of such holder is Impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan), all Persons that are party, or subject, to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Person acquiring property under the Plan, and any and all non-Debtor counterparties to executory contracts, unexpired leases, and any other prepetition agreements. All Claims and Interests shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a Claim or Interest has voted on the Plan; *provided, however*, that the allowance, amount, and priority of any Disputed Claim, including any WARN Act Claim, that has not been determined by an order of the Bankruptcy Court prior to the Effective Date, shall be determined only in accordance with Article VII of the Plan.

### *2. Vesting of Assets.*

The Plan provides that, on the Effective Date, except as otherwise provided in the Plan or in the Confirmation Order, the assets of the Debtor's estate shall vest in Baker & Taylor, LLC as the Liquidating Debtor free and clear of all Claims, Liens, encumbrances, charges and other Interests. The Plan further provides that all injunctions or stays arising prior to the Confirmation Date in accordance with sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, remain in full force and effect until the Effective Date.

### *3. Term of Pre-Confirmation Injunctions or Stays.*

Unless otherwise provided herein, all injunctions or stays arising prior to the Confirmation Date in accordance with sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

***4. Releases, Exculpations, and Injunctions.***

The Plan provides important information with respect to releases, exculpations, and injunctions in connection with confirmation of the Plan. Every holder of a Claim or Interest should review such releases, exculpations and injunctions in full:

RELEASE OF THE DEBTOR. AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASING PARTY SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED, WAIVED, AND DISCHARGED THE DEBTOR FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION UP UNTIL THE EFFECTIVE DATE), INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR THAT MAY BE ASSERTED ON BEHALF OF THE DEBTOR OR ITS ESTATE, THAT SUCH RELEASING PARTY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTOR OR THE CONDUCT OF ITS BUSINESS (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION UP UNTIL THE EFFECTIVE DATE), THE FORMULATION, PREPARATION, DISSEMINATION, OR NEGOTIATION OF THE PLAN, THE DISCLOSURE STATEMENT, ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN, THE DISCLOSURE STATEMENT, THIS CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN, OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION) RELATED OR RELATING TO THE FOREGOING. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH IN ARTICLE 10.4(A) OF THE PLAN SHALL NOT RELEASE (I) ANY PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE; OR (II) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR PERSON UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN. FOR THE AVOIDANCE OF DOUBT, NOTHING IN THIS SECTION 10.04(A) RELEASES ANY CAUSE OF ACTION HELD BY ANY NON-DEBTOR AGAINST ANY OTHER NON-DEBTOR.

RELEASE BY THE DEBTOR. PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, AS OF THE EFFECTIVE DATE, THE

DEBTOR AND ITS ESTATE SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED, WAIVED, AND DISCHARGED THE RELEASED PARTIES FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER, IN EACH CASE, WHETHER PREPETITION OR POSTPETITION (INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR THAT MAY BE ASSERTED ON BEHALF OF THE DEBTOR AND ITS ESTATE, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTOR OR THE CONDUCT OF ITS BUSINESS (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION), THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION OF THE PLAN, THE DISCLOSURE STATEMENT, ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN, THE DISCLOSURE STATEMENT, THIS CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN, OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION) RELATED OR RELATING TO THE FOREGOING. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH IN ARTICLE 10.4(B) OF THE PLAN SHALL NOT RELEASE (I) ANY RELEASED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE; (II) ANY CLAIMS OR CAUSES OF ACTION INCLUDING, WITHOUT LIMITATION, THOSE ARISING UNDER CHAPTER 5 OF THE BANKRUPTCY CODE, AGAINST ANY PERSON THAT IS OR AT ANY RELEVANT TIME WAS AN INSIDER (AS DEFINED IN SECTION 101(31) OF THE BANKRUPTCY CODE); OR (III) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR PERSON UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN. ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE RELEASES DESCRIBED IN ARTICLE 10.04 OF THE PLAN BY THE DEBTOR, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT EACH RELEASE DESCRIBED IN ARTICLE 10.04 OF THE PLAN IS: (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, INCLUDING, WITHOUT LIMITATION, THE RELEASED PARTIES' CONTRIBUTIONS TO IMPLEMENTING THE PLAN; (II) A GOOD-FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTOR; (III) IN THE BEST INTERESTS OF THE DEBTOR AND ALL HOLDERS OF CLAIMS AND INTERESTS; (IV) FAIR, EQUITABLE, AND REASONABLE; (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; (VI) A SOUND EXERCISE OF THE DEBTOR'S BUSINESS JUDGMENT; AND (VII) A BAR TO THE DEBTOR OR ITS ESTATE,

ASSERTING ANY CLAIM OR CAUSE OF ACTION RELATED THERETO, OF ANY KIND, AGAINST ANY OF THE RELEASED PARTIES OR THEIR PROPERTY. FOR THE AVOIDANCE OF DOUBT, NOTHING IN THIS SECTION 10.04(B) RELEASES ANY CAUSE OF ACTION HELD BY ANY NON-DEBTOR AGAINST ANY OTHER NON-DEBTOR.

EXCULPATION AND LIMITATION OF LIABILITY. EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY FOR, AND EACH EXCULPATED PARTY IS HEREBY EXCULPATED FROM, ANY CAUSE OF ACTION FOR ANY CLAIM RELATED TO ANY ACT OR OMISSION FROM THE PETITION DATE TO THE EFFECTIVE DATE (EXCEPT WITH RESPECT TO THE PLAN ADMINISTRATOR, THE OVERSIGHT COMMITTEE, AND THEIR RESPECTIVE PROFESSIONALS, THE DATE OF ENTRY OF A FINAL DECREE CLOSING THE BANKRUPTCY CASE) IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, THIS CHAPTER 11 CASE, IN WHOLE OR IN PART, THE DEBTOR, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OF THE PLAN, THE DISCLOSURE STATEMENT, ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN, THE DISCLOSURE STATEMENT, THE FILING OF THIS CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR THE DISTRIBUTION OF CASH UNDER THE PLAN, OR ANY OTHER RELATED AGREEMENT, EXCEPT FOR CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, BUT IN ALL RESPECTS, SUCH EXCULPATED PARTIES SHALL BE ENTITLED TO THE FULLEST EXTENT PERMITTED BY LAW TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES. THE EXCULPATED PARTIES HAVE, AND UPON SUBSTANTIAL CONSUMMATION OF THE PLAN, SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE LAWS WITH REGARD TO THE SOLICITATION OF, AND DISTRIBUTION OF, CONSIDERATION PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN. NOTWITHSTANDING ANY OTHER PROVISION OF THE PLAN, EXCEPT FOR CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, ANY LIABILITY OF THE PLAN ADMINISTRATOR SHALL BE LIMITED TO, AND RECOVERABLE SOLELY FROM, PROPERTY OF THE ESTATE HELD BY THE LIQUIDATING DEBTOR, AND NO HOLDER OF A CLAIM OR INTEREST OR OTHER PARTY SHALL HAVE RECOURSE TO THE PLAN ADMINISTRATOR'S PERSONAL ASSETS ON ACCOUNT OF ANY CLAIM OR CAUSE OF ACTION ARISING FROM THE PLAN ADMINISTRATOR'S PERFORMANCE UNDER THE PLAN.

INJUNCTION. FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER. FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN ARTICLE X OF THE PLAN, THE RELEASING PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO ARTICLE X OF THE PLAN.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR FOR DISTRIBUTIONS REQUIRED TO BE PAID OR DELIVERED PURSUANT TO THE PLAN, ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO SECTION 10.04 OF THE PLAN OR ARE SUBJECT TO EXCULPATION PURSUANT TO SECTION 10.05 OF THE PLAN, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3) CREATING, PERFECTING OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND AGAINST SUCH PERSONS OR THE PROPERTY OR ESTATE OF SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (4) ASSERTING ANY RIGHT OF SETOFF OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH PERSONS OR AGAINST THE PROPERTY OF SUCH PERSONS; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED, SETTLED OR DISCHARGED PURSUANT TO THE PLAN.

NOTWITHSTANDING ANY OTHER PROVISION OF THE PLAN, PURSUANT TO SECTION 1141(D)(3) OF THE BANKRUPTCY CODE, CONFIRMATION OF THE PLAN SHALL NOT DISCHARGE THE DEBTOR. THE DEBTOR SHALL NOT RECEIVE A DISCHARGE UNDER SECTION 1141(D)(1) OF THE BANKRUPTCY CODE BECAUSE THE PLAN PROVIDES FOR THE LIQUIDATION OF ALL OR SUBSTANTIALLY ALL OF THE PROPERTY OF THE ESTATE AND THE DEBTOR DOES NOT ENGAGE IN BUSINESS AFTER CONSUMMATION OF THE PLAN.

***5. Reservation of Rights.***

By its terms, the Plan will have no force or effect unless and until the Effective Date occurs. Prior to the Effective Date, none of the filing of the Plan, any statement or provision contained in the Plan, or action taken by the Debtor with respect to the Plan or the Disclosure Statement will be, or will be deemed to be, an admission or waiver of any rights of any Debtor or any other party, including the Released Parties, with respect to any Claims or Interests or any other matter.

## IV. RETENTION OF JURISDICTION.

The Plan Provides for the Bankruptcy Court to retain exclusive jurisdiction (unless otherwise explicitly stated otherwise in the Plan or Confirmation Order), over matters arising in, arising under, or related to the Bankruptcy Case, the Plan, or the Confirmation Order, including jurisdiction to:

a. Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Interests;

b. Resolve any matters related to the assumption and assignment, or rejection, of any executory contract or unexpired lease to which the Debtor is party to or with respect to which the Debtor may be liable, and hear, determine, and, if necessary, liquidate, any Claims arising therefrom;

c. Determine any and all motions, adversary proceedings, applications, contested matters, or other litigated matters pending on the Effective Date;

d. Enter, implement, or enforce such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Confirmation Order;

e. Issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

f. Modify the Plan or Confirmation Order before or after the Effective Date under section 1127 of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order;

g. Hear and determine any rights, Claims, or Causes of Action held or reserved by, or accruing to, the Debtor pursuant to the Bankruptcy Code, the Confirmation Order, or any other applicable law;

h. Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with this chapter 11 case, and to hear and determine any disputes in connection therewith;

i. Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, any transactions contemplated thereby, or any agreement, instrument, or other document governing or relating to any of the foregoing, or the effect of the Plan under any agreement to which the Debtor or any Affiliate thereof is party;

j. Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

k. Enter and enforce any order for the sale or transfer of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code, including the Confirmation Order;

l. Hear and determine all disputes involving the existence, scope, and nature of the discharges, releases, or injunctions granted under the Plan and the Bankruptcy Code;

m. Hear and determine any matters arising under or related to sections 1141 and 1145 of the Bankruptcy Code;

n. Recover all assets of the Debtor and property of the Debtor's estate, wherever located;

o. Enter a final decree closing this chapter 11 case; and

p. Hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code.

**A. Miscellaneous Provisions.**

***1. Exemption from Certain Transfer Taxes.***

The Plan provides that, to the fullest extent permitted by applicable law, any sale transactions consummated by the Debtor or Liquidating Debtor on and after the Confirmation Date and any assumption, assignment, and/or sale by the Debtor of its interests in executory contracts pursuant to section 365(a) of the Bankruptcy Code, shall constitute a "transfer under a plan" within the purview of section 1146 of the Bankruptcy Code, and shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

***2. Substantial Consummation.***

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### *3. Modifications and Amendments.*

The Plan provides that it may be amended, modified, or supplemented by the Debtor in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as otherwise ordered by the Bankruptcy Court. In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims and Allowed Interests pursuant to the Plan, the Plan Administrator, with the consent of (i) prior to the Effective Date, the Committee, or (ii) on or after the Effective Date, the Oversight Committee, may remedy any defect or omission or reconcile any inconsistencies in the Plan, the Plan Documents and/or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan, and any holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan as amended, modified, or supplemented.

The Plan also provides that_the Debtor may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court; provided, however, that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Allowed Claims or Allowed Interests under the Plan.

### *4. Revocation or Withdrawal of the Plan.*

The Plan provides that the Debtor may revoke or withdraw the Plan prior to the Effective Date. If the Debtor revokes or withdraws the Plan prior to the Effective Date, or if the Effective Date does not occur, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Person, (ii) prejudice in any manner the rights of the Debtor or any other Person or (iii) constitute an admission of any sort by the Debtor or any other Person.

### *5. Severability.*

The Plan provides that, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

***6. Additional Documents.***

The Plan permits the Debtor to enter into any agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor, the Liquidating Debtor, the Plan Administrator, and all holders of Claims or Interests receiving Plan distributions and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

***7. Governing Law.***

The Plan provides that, except as otherwise required by the Bankruptcy Code or Bankruptcy Rules, and subject to the provisions of any contract, lease instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising under the Plan are governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to conflict of laws principles; *provided*, however, that governance matters relating to the Debtor and the Liquidating Debtor, as applicable, shall be governed by the laws of the State of incorporation or formation thereof.

***8. Successors and Assigns.***

The Plan provides that the rights, benefits, and obligations of any Person named or referred to therein are binding upon, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person.

***9. Notices.***

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtor, the Liquidating Debtor, the Committee, or the Plan Administrator shall be served on:

The Debtor:

BAKER & TAYLOR, LLC
13000 South Tryon Street, Suite F
Private Mailbox 191
Charlotte, North Carolina 28278

Counsel for the Debtor:

OFFIT KURMAN, P.A.
Paul J. Winterhalter
Court Plaza South
21 Main Street, Suite 158
Hackensack, New Jersey 07601
Email: pwinterhalter@offitkurman.com

Counsel for the Committee:

LOWENSTEIN SANDLER LLP
Andrew Behlmann
Michael Papandrea
One Lowenstein Drive
Roseland, New Jersey 07068
E-mail: abehlmann@lowenstein.com
E-mail: mpapandrea@lowenstein.com

-and-

LOWENSTEIN SANDLER LLP
Bruce S. Nathan
Eric J. Seltzer
1251 Avenue of the Americas
New York, New York 10020
E-mail: bnathan@lowenstein.com
E-mail: eseltzer@lowenstein.com

***10. Reservation of Rights.***

The Plan provides, that, except as expressly set forth therein, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order. None of the filing of the Plan, any statement or provision contained herein, or the taking of any action by the Debtor with respect to the Plan shall be or shall be deemed to be, an admission or waiver of any rights of the Debtor with respect to any Claims or Interests prior to the Effective Date.

***11. Waiver or Estoppel.***

Each holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured, or not subordinated by virtue of an agreement made with the Debtor or its counsel or any other Person, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

## V. CONFIRMATION REQUIREMENTS AND PROCEDURES

**PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF LIQUIDATION IS VERY COMPLEX.**

The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing Claims. The proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

**A. Voting on the Plan.**

***1. Who May Vote on the Plan.***

Under the Bankruptcy Code, not all holders of claims against a debtor are entitled to vote on a chapter 11 plan. As discussed above, the Debtor is soliciting votes to accept or reject the Plan only from holders of Classes 1, 2, and 3 (the "***Voting Classes***").

Claims in the Voting Classes are Impaired under the Plan and holders of such Claims may be entitled to a distribution under the Plan. Accordingly, holders of Claims in the Voting Classes have the right to vote to accept or reject the Plan and will be provided with a ballot for voting. The Debtor is not soliciting votes from holders of Administrative Claims and Priority Tax Claims because Claims in those unclassified categories or Classes are not Impaired under the Plan. Holders of Claims and Interests in non-voting classes will not be provided with a ballot because such holders are presumed to accept or reject the Plan under section 1126(f) or (g) of the Bankruptcy Code, as applicable. Such non-voting holders will receive Non-Voting Notices as described in more detail in the Solicitation Procedures Order. The table included in Section I.B. above, entitled The Chapter 11 Plan of Orderly Liquidation," provides a summary of the status and voting rights of each unclassified group or Class (and, therefore, of each holder of an Allowed Claim within such Class) under the Plan.

***2. Voting on the Plan.***

The Voting Deadline is **December 1, 2026 at 4:00 p.m. (Eastern Standard Time)**. To be counted as votes to accept or reject the Plan, all ballots must be properly executed, completed, and delivered (either by using the return envelope provided, by first class mail, overnight delivery or personal delivery or via electronic, online transmission) so that they are actually received on or before the Voting Deadline by the Debtor at the following addresses:

If by first class mail, overnight courier, or hand delivery:

> Baker & Taylor, LLC Ballot Processing
> Attn: Omni Agent Solutions, Inc.
> 5955 De Soto Avenue, Ste. 100
> Woodland Hills, California 91367

If by electronic transmission:

> Omni will accept online transmission of Ballots through the E-Ballot Portal on Omni's website at https://omniagentsolutions.com/BakerTaylor-Ballots, but will **not** accept Ballots submitted by other forms of electronic transmission or facsimile. Any Ballots so submitted will not be counted for purposes of voting on the Plan.

***3. Who Is Not Entitled to Vote on the Plan.***

The following four types of Claims are not entitled to vote: (i) Claims that have been disallowed; (ii) Claims in Unimpaired Classes; (iii) Claims entitled to priority pursuant to Bankruptcy Code Section 507(a)(2), and (a)(8); and (iv) Claims in Classes that do not receive or

retain any value under the Plan. Claims in Unimpaired Classes are not entitled to vote because such Classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code Section 507 (a)(2), and (a)(8) are not entitled to vote because such Claims are not placed in Classes and they are required to receive certain treatment specified by the Code. Claims in Classes that do not receive or retain any value under the Plan do not vote because such Classes are deemed to have rejected the Plan. **EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.**

***4. Votes Necessary to Confirm the Plan.***

Because Impaired Classes exist under the Plan, the Bankruptcy Court cannot confirm the Plan unless (i) all Impaired Classes have voted to accept the Plan, or (ii) at least one Impaired Class has accepted the Plan without counting the votes of any insiders within that Class, and the Bankruptcy Court determines that the Plan does not discriminate unfairly, and is fair and equitable, with respect to each non-accepting Class of Claims or Interests, as further described in Paragraph 5 below. A Class of Claims is considered to have accepted the Plan when more than one-half in number and at least two-thirds in dollar amount of the Allowed Claims that actually voted, voted in favor of the Plan.

***5. Treatment of Nonaccepting Classes.***

Even if an Impaired Class does not accept the proposed Plan, the Bankruptcy Court may nonetheless confirm the Plan if the nonaccepting Class is treated in the manner required by the Bankruptcy Code. The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as “cramdown.” The Bankruptcy Code allows a plan to be “crammed down” on nonaccepting classes of claims or interests if it meets all confirmation requirements except the voting requirements of Section 1129(a)(8), and if the plan does not “discriminate unfairly” and is “fair and equitable” within the meaning of 11 U.S.C. §1129(b) and applicable case law toward each impaired class that has not voted to accept the plan.

The “fair and equitable test” applies to classes of different priority and status and includes the general requirement that no class of claims receive more than 100% of the amount of the allowed claims in such Class. As to any dissenting class, the test also applies certain standards depending upon the type of claims or interests in such class. Regarding unsecured claims, the “fair and equitable” standard requires that, as to a non-accepting class of unsecured claims, (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the plan effective date, equal to the allowed amount of such claim; *or* (ii) the holder of any claim or any Interest that is junior to the claims of such class will not receive or retain any property under the plan on account of such junior claim or junior interest.

In this case, the Debtor submits that the Plan satisfies the “fair and equitable test” because no Impaired Class of Claims or Interests is entitled to receive any distribution on Claims in such Class unless all superior Classes have been paid in full under the Plan. Accordingly, the Debtor believes that the Plan and the treatment of all Classes of Claims and Interests under the Plan satisfy the requirements for “cramdown.”

**B. Best Interests of Creditors.**

Section 1129(a)(7) of the Bankruptcy Code requires that a bankruptcy court find, as a condition to confirmation, that a chapter 11 plan provides, with respect to each class, that each holder of a claim or an interest in such class either (i) has accepted the plan or (ii) will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor liquidated on that date under chapter 7 of the Bankruptcy Code. To make these findings, a bankruptcy court must: (i) estimate the cash liquidation proceeds that a chapter 7 trustee would generate if the debtor's chapter 11 case were converted to a chapter 7 case and the assets of the debtor's estate were liquidated; (ii) determine the liquidation distribution that each non-accepting holder of a claim or an interest would receive from such liquidation proceeds under the priority scheme dictated in chapter 7; and (iii) compare the holder's liquidation distribution to the distribution under the plan that the holder would receive if the plan were confirmed and consummated.

To satisfy the requirements of section 1129(a)(7) of the Bankruptcy Code, the Debtor, together with its retained advisors, have prepared the liquidation analysis attached as **Exhibit D** to this Disclosure Statement (the "***Liquidation Analysis***"). Based upon on the Liquidation Analysis, the Debtor believes that holders of Claims will receive equal or greater value as of the Effective Date than such holders would receive in a hypothetical chapter 7 liquidation and that the Plan therefore satisfies the "best interests" test set forth in section 1129(a)(7) of the Bankruptcy Code.

**C. Feasibility.**

Under section 1129(a)(11) of the Bankruptcy Code, a bankruptcy court may require that confirmation of a chapter 11 plan is not likely to be followed by the liquidation or the need for further financial reorganization of the debtor, or any successor to the debtor (unless such liquidation or reorganization is proposed in the plan). This test is generally known as the "feasibility test." In the present Bankruptcy Case, the Plan proposes the liquidation of the Debtor's assets to pay Allowed Claims, and the Debtor is therefore exempt from the feasibility test under section 1129(a)(11).

## VI. ALTERNATIVES TO CONFIRMATION OF A CHAPTER 11 PLAN

If the Plan is not confirmed, the Debtor's alternatives include: (i) liquidation of the Debtor's estate under chapter 7 of the Bankruptcy Code; (ii) an alternative plan under chapter 11; or (iii) dismissal of the Bankruptcy Case. None of these alternatives provide an alternative more favorable than confirmation of the Plan.

**A. Liquidation Under Chapter 7.**

If the Plan is not confirmed, the Bankruptcy Case may be converted to a case under chapter 7 of the Bankruptcy Code. In a chapter 7 liquidation, a trustee would be appointed or elected to liquidate the Debtor's assets for distribution to creditors in accordance with the priorities established by the Bankruptcy Code. As set forth above and in the attached Liquidation Analysis, the Debtor believes that liquidation under chapter 7 would result in lower recoveries, higher administrative costs (including the expenses of a chapter 7 trustee and associated Professionals), and prolonged delays compared to the orderly liquidation contemplated by the Plan.

**B. Alternative Chapter 11 Plan.**

Under chapter 11, if the Plan is not confirmed, the Debtor, the Committee, or any other party in interest could attempt to formulate and propose an alternative chapter 11 plan. Negotiating an alternative plan would require substantial additional time and expense, increase professional administrative fees, and deplete remaining cash reserves. The Debtor submits that the Plan reflects the highest and best recovery achievable under the circumstances and that any alternative plan would result in lesser or delayed distributions to creditors.

**C. Dismissal of the Bankruptcy Case.**

If the Plan cannot be confirmed, the Debtor or another party in interest could seek dismissal of the Bankruptcy Case pursuant to section 1112 of the Bankruptcy Code. Dismissal would terminate the protection of the automatic stay under section 362 of the Bankruptcy Code. Consequently, creditors would be free to pursue state law remedies, including foreclosures, judgments, and asset seizures. The Debtor believes that dismissal would result in a chaotic, disorderly race to the courthouse. This dynamic would maximize litigation costs, deplete corporate value, and cause disproportionate harm to smaller creditors who lack the resources to aggressively pursue individual collections.

## VII. RISK FACTORS ASSOCIATED WITH THE PLAN

Holders of Claims should read and carefully consider the risk factors set forth below, as well as the other information set forth in this Disclosure Statement and the documents delivered together herewith, referred to or incorporated by reference herein, before voting to accept or reject the Plan. These risk factors should not be regarded as constituting the only risks present in connection with the Plan and its implementation.

**A. Business and Financial Risk Factors; Certain Bankruptcy Considerations.**

***1. Satisfaction of Claims After the Effective Date by the Liquidating Debtor.***

The Plan provides that Claims first becoming Allowed or due and payable after the Effective Date will be paid by the Plan Administrator using funds of the Liquidating Debtor. While the Debtor believes that the Liquidating Debtor will be able to make timely payments required under the Plan, it is possible that additional expenses and Administrative Claims are incurred such that the Liquidating Debtor is unable to satisfy all of the payments required to be made to holders of Allowed Claims under the Plan.

***2. Delay in Confirmation of the Plan May Result in Significant Costs.***

If the Plan is not confirmed in the time frame currently contemplated, the Debtor will incur additional costs and expenses in administering the Bankruptcy Case, which could result in the Debtor having insufficient liquidity to pay creditors as contemplated under the Plan. If this were to occur, the Plan could not go effective and the Debtor would be forced to consider alternative resolutions for the Bankruptcy Case, which could result in significant reductions to value available for distributions to creditors.[

### *3. Parties in Interest May Object to Confirmation of the Plan.*

Although the Debtor believes that the Plan is the best alternative for treatment of Claims and Interests in the Bankruptcy Case, parties in interest may object to the confirmation of the Plan. Under section 1128(b) of the Bankruptcy Code, any party in interest—including creditors, equity holders, the U.S. Trustee, or any other qualified stakeholder—has standing to object to confirmation. If one or more material objections are filed, it could delay or prevent the Plan from becoming effective.

### *4. Risk of Non-Occurrence of the Effective Date.*

Although the Debtor believes that the Effective Date will occur shortly after the Confirmation Date, there can be no assurance as to such timing, or as to whether the Effective Date will, in fact, occur. If the Effective Date does not occur, the Debtor would be forced to consider alternative resolutions for the Bankruptcy Case, which could result in significant reductions to value available for distributions to creditors.

### *5. Failure to Satisfy Vote Requirements.*

If accepting votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtor intends to seek, as promptly as practicable thereafter, confirmation of the Plan. If sufficient accepting votes are not received, the Debtor may seek nonconsensual confirmation in accordance with subsection 1129(b) of the Bankruptcy Code, seek to confirm an alternative chapter 11 plan or convert the case under chapter 7 of the Bankruptcy Code. There can be no assurance that the Bankruptcy Court will reach the conclusion that the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code, or that the terms of any alternative chapter 11 plan or recoveries under a chapter 7 case would be similar or as favorable to holders of Allowed Claims as those proposed in the Plan.

### *6. The Debtor May Not Have Sufficient Liquidity to Confirm the Plan.*

As of the date hereof, the Debtor contemplates that the Plan will be funded by, among other things, Cash in the Debtor's bank accounts. Although the estimated amount of such liquidity is projected to be sufficient to fully satisfy the estimated distribution to holders of the Allowed Claims that are required to be paid in full in Cash under the Plan, it is possible that the Debtor may have insufficient Cash, or that additional expenses and Administrative Claims are incurred such that the Debtor is unable to satisfy all of the Allowed Claims that are required to be paid in full in Cash under the Plan on the Effective Date. If this were to occur, the Plan could not become effective and the Debtor would be forced to consider alternative resolutions for the chapter 11 case, which could result in significant reductions to value available for distributions to creditors.

## B. Other Risk Factors

In addition to the foregoing risk factors associated with the Plan, the Debtor submits that there are potential risks under the Plan that actual recoveries for Allowed Claims may differ from estimates, that the Plan and Disclosure Statement rely on unaudited financial statements and information supplied by the Debtor, and that such information was necessarily relied upon by the Debtor's advisors in drafting of the Plan and Disclosure Statement.

## VIII. TAX CONSEQUENCES OF THE PLAN

**EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT ITS OWN TAX ADVISORS AS TO THE U.S. FEDERAL INCOME TAX CONSEQUENCES, AS WELL AS OTHER TAX CONSEQUENCES, INCLUDING UNDER ANY APPLICABLE STATE, LOCAL AND FOREIGN LAW, OF THE CONSUMMATION OF THE PLAN TO SUCH HOLDER.**

### A. Consequences to Holders of Unsecured Claims.

Persons who hold Allowed Unsecured Claims that receive Cash may be treated as receiving payment in a taxable exchange under section 1001 of the Internal Revenue Code. Other than with respect to any amounts received that are attributable to accrued but untaxed interest, each holder of such Claims may recognize gain or loss equal to the difference between the (a) sum of the Cash received in exchange for the Claim, and (b) such Person's adjusted basis, if any, in such Claim.

### B. Accrued Interest and OID.

A portion of the payment received by the holder of Allowed Claims may be attributable to accrued interest or original issue discount ("***OID***") on such Claims. Such amount should be taxable to the holder as interest income if such accrued interest or OID has not been previously included in the holder's gross income for United States federal income tax purposes. Conversely, holders of Claims may be able to recognize a deductible loss to the extent that any accrued interest or OID on the Claims was previously included in the holder's gross income but was not paid in full by the Debtor. Under the Plan, the aggregate consideration to be distributed to holders of Allowed Unsecured Claims will be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest or OID that accrued on such Claims, if any. The Internal Revenue Service (the "***IRS***") could take the position that the payment received by the U.S. Holder should be allocated in some way other than as provided in the Plan.

### C. Information Reporting and Backup Withholding.

Information reporting generally will apply to payments to a holder pursuant to the Plan, unless the holder is an entity that is exempt from information reporting and, when required, demonstrates this fact. Any such payment to a holder that is subject to information reporting generally will also be subject to backup withholding, unless such holder provides the appropriate documentation (generally, IRS Form W-9) to the applicable withholding agent certifying that, among other things, its taxpayer identification number is correct, or otherwise establishes an exemption.

**THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. THE FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF U.S. FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER OF A CLAIM OR INTEREST IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES AND INCOME TAX SITUATION. ALL HOLDERS OF CLAIMS OR INTERESTS SHOULD CONSULT WITH THEIR TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING THE APPLICABILITY AND EFFECT**

**OF ANY STATE, LOCAL OR FOREIGN TAX LAWS, AND OF ANY CHANGE IN APPLICABLE TAX LAWS.**

## IX. RECOMMENDATION

The Debtor submits that the Plan is preferable to the alternatives described in this Disclosure Statement because it provides for a larger recovery for the Debtor's holders of Allowed Claims than such holders would otherwise receive or retain in liquidation under chapter 7 of the Bankruptcy Code. In addition, any alternative other than confirmation of the Plan could result in extensive delays and increased Administrative Claims, resulting in reduced recoveries to holders of Allowed Claims than those proposed under the Plan. Accordingly, the Debtor strongly recommends that holders of Claims entitled to vote on the Plan vote to **ACCEPT** the Plan.

Dated: October 27, 2026

Respectfully submitted,

Baker & Taylor, LLC

By: *<u>/s/ Amandeep S. Kochar</u>*____________
Amandeep S. Kochar
Chief Executive Officer
Baker & Taylor, LLC